FILED

*Attorney Work Product – Do Not Release*

2019 MAY -8  P 3: 38

## DECLARATION OF CLARINA (CORI) M. ROSE
## IN SUPPORT OF APPLICATION FOR ADMINISTRATIVE WARRANT

BRIDGEPORT CT

I, Cori Rose, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I submit this Declaration in support of the Environmental Protection Agency's ("EPA") Application for Administrative Warrant pursuant to Section 308 of the Clean Water Act ("CWA"), 33 U.S.C. § 1318, for the purpose of authorizing the EPA, its contractors, and representatives from the U.S. Army Corps of Engineers ("COE") and U.S. Department of Justice ("DOJ"), as necessary, to conduct inspections to determine whether violations of the Act have occurred on a 72-acre site comprised of two parcels located on either side of the town line between Wallingford and North Branford, Connecticut: 216 Northford Road, Wallingford, Connecticut and 69 Woods Hill Road (rear), North Branford, Connecticut (hereafter "the Site").

2.      I make this declaration in my capacity as a Senior Project Manager for the Regulatory Division, COE New England District.  I have served in this capacity for 19 years.

3.      My current responsibilities include providing technical support in CWA enforcement actions, including site inspections and aquatic resource delineation to document the presence of wetland soils, wetland vegetation and hydrology, and the use of remote digital tools to interpret aerial photography, maps and project plans.  I investigate and seek appropriate enforcement for unauthorized discharges of fill or dredge material into waters of the United States under Section 404 of the CWA, 33 U.S.C. § 1344.

4.      I have a Bachelor of Science degree from the University of Rhode Island, 1991, am a Professional Wetland Scientist, and train COE personnel on wetland delineation, hydric soil analysis, and identification of hydrological indicators.

5.     To the best of my knowledge, both parcels are owned by members of the Cooke-Andrews family, with whom the COE has had contact in past years.

## COE AND EPA CO-ENFORCEMENT UNDER THE CWA

6.     The COE New England District and EPA Region I have a field level agreement (FLA) based on the agencies' nationwide Memorandum of Agreement for Federal Enforcement for the Section 404 Program of the Clean Water Act.  Under the FLA, EPA Region I is the lead enforcement agency for certain unpermitted discharges, including repeat or flagrant violators, and discharges related to agricultural or silvicultural operations.

7.     To refer a case to EPA Region I for lead agency status, the COE forwards a referral package containing sufficient information to allow EPA Region I to make an informed decision on whether to accept the referral for further action.

8.     On November 12, 2017, the COE referred the Cooke-Andrew's case to EPA Region 1 for enforcement of potential violations of Section 404 of the CWA.

9.     I prepared the memorandum included in the referral package, which identified the case as one fit for EPA referral as it involved willful, flagrant, knowing and/or substantial impacts. This determination was based on information contained in the case file, as stated below.

## BASIS FOR THE COE'S REFERRAL TO EPA

10.     According to the case record, the COE opened an enforcement file on this Site on April 27, 2010, in response to a phone inquiry from the Town of Wallingford Wetland Enforcement Officer, Erin O'Hare, who stated that unauthorized work within wetlands at 216 Northford Road began in 2009, despite multiple Cease and Desist Orders from the Town.

11.     The case file indicates that COE Project Manager Paula Kullberg sent an initial inquiry via Certified Mail to Jeff & Lynne Cooke Andrews at 210 Northford Road, Wallingford, Connecticut 06492 on May 1, 2010.  The letter was returned to sender on May 20, 2010.

12.     The case file indicates that the COE sent a second letter via Certified Mail to Jeff & Lynn Cooke Andrews at 210 Northford Road, Wallingford, Connecticut 06492 on March 17, 2011, which was returned to sender on April 5, 2011.

13.     The case file indicates that during a phone call on April 14, 2011, Jeff Andrews granted the COE permission to conduct a site visit on his property on April 15, 2011.

14.     The case file indicates that COE personnel visited the site on April 15, 2011, and that during that visit, COE personnel (Mike Riccio and Marie Sheehan) confirmed the presence of a CWA violation on the Site. Specifically, personnel identified the discharge of fill, excavation and grubbing in forested wetlands over an area estimated at 1.3 acres.

15.     According to the case file, COE staff verbally advised Mr. Andrews that no further work should be undertaken within land under the COE's jurisdiction under Section 404 of the CWA until authorization from the COE was obtained.

16.     According to the case file, on May 19, 2011, the COE sent Mr. Andrews a written notice of violation, an order for initial corrective measures, and a direction to Cease and Desist.

17.     According to the case file, during a May 20, 2011 phone call, COE staff (M. Ricco and J. McCarthy) informed Mr. Andrews of the potential legal consequences of continuing to discharge fill in wetlands without proper COE authorization, and scheduled a second site visit.

18.     The case file indicates that on June 2, 2011, COE personnel conducted a second site visit, which revealed further unauthorized activities under the CWA (i.e. placement of

material in wetlands and regarding of wetlands on the Northford side). During the site visit on June 2, 2011, COE informed Mr. Jeff Andrews of the unauthorized activities *See* Exhibit A.

19.     During the June 2, 2011 site visit, Mr. Jeff Andrews stated that he would undertake the following corrective measures to address the unauthorized impacts: Remove the stockpile of material that he placed in wetland when he constructed the pond and restore graded wetlands by reestablishing the original wetland grade and stabilizing it with wetland vegetation.

20.     The case file indicates that in a June 10, 2011 email to Mr. Andrews, the COE identified the types of land-disturbing activities that would constitute a federal violation, explained why the agricultural exemption of the regulation did not apply, and identified the corrective measures Mr. Andrews agreed to undertake to address the unauthorized impacts. *See* Exhibit B.

21.     According to the case file, on July 1, 2011 the COE (via Regulatory Chief J. McCarthy) issued a letter to Jeff Andrews summarizing the agreement reached during the June 2, 2011 site visit, and confirmed the COE's finding that the conversion of wetlands, including grubbing, stumping and grading, required a CWA permit from the COE. *See* Exhibit C.

22.     According to the case file, on July 30, 2011, Mr. Andrews sent an e-mail to the COE Project Manager, Michael Riccio, stating that he did not wish to work with the COE to authorize the existing wetland impacts because he believed the impacts were not federal wetlands and exempt from COE jurisdiction. *See* Exhibit D.

23.     According to the case file, the COE sent a letter to Mr. Andrews on August 23, 2013, requesting access to the property. The case file indicates the COE was denied access. *See* Exhibit E.

24.     The case file indicates that on January 23, 2012, the Town of Wallingford obtained from the State Superior Court of New Haven an injunction enjoining Mr. Andrews' work in wetlands, and requiring him to submit a wetland remediation/restoration plan to the Court by July 30, 2012 (Docket CV-10-5033404).

25.     The case file indicates that the COE delayed further action on this case, pending resolution of the Superior Court case and the court-ordered restitution.

26.     I began working on this case on June 6, 2017.

27.     On June 6, 2017, I spoke with the Town of Wallingford attorney (Janice Small) to inquire into the status of its case against Mr. Andrews. Ms. Small reported that the site remained in noncompliance with the court order.

28.     In October, 2017 I prepared a photographic time series from aerial photographs available, from 2006 – 2017. The photographs focused on a 9.19 acre-area of the Site that had been identified as a palustrine forested (PFO) wetland previously by a consultant retained by the Town of Wallingford *See* Exhibit F ("Wetland and Watercourse Violation Assessment Report, 216 Northford Road, Wallingford, Connecticut," prepared by Milone & MacBroom, Inc).

29.     The photographs I reviewed and observed show:

    a.  August 2009 through September 2011 –cutting of the PFO area begins;

    b.  March 2013 – the PFO wetland area cleared, but not stumped or grubbed;

    c.  September 19, 2013 – the upper half of the PFO wetland has been stumped;

    d.  October 2014  – all except the lowest and wettest portion of the PFO wetland has been stumped and cleared and stockpiles for topsoil grading are present;

    e.  September 15, 2015 – grubbing is encroaching into the lower portion of the PFO wetland;

    f.   April 2016 – grubbing is ongoing-complete with windrowed trees/rootballs and topsoil piles to be graded;

    g.   August 2016 – vegetation and topsoil is being removed/grading in the lower half of the PFO wetland;

    h.   September 2016 – soil piles ready to be graded into stumped/grubbed lower half of the PFO wetland; and

    i.   October 2016 – lower half of the PFO wetland area is now filled/graded.

30.   I have reason to believe, based on my review of the COE case file that:

    a.   The area of the Site identified by the Town of Wallingford's consultant as a PFO wetland was a federal wetland contiguous with a perennial tributary and possessed a seasonal relative relatively-permanent drainage feature prior to its alteration;

    b.   Discharge of fill occurred in the former PFO wetland after the May 2010 notification to Mr. Andrews of COE jurisdiction under Section 404 of the CWA;

    c.   Discharge of fill occurred in the former PFO wetland area after the March 2011 notification to Mr. Andrews that a permit from the COE would be required for the completed work, and for any future work in waters and wetlands at the Site;

    d.   Fill in the former PFO wetland occurred in the form of stumping, grubbing and grading after the May 2011 COE notification to Mr. Andrews that such activity was regulated under COE jurisdiction, and

    e.   Discharge of fill occurred in the former PFO wetland after the July 2011 COE notification to Mr. Andrews that the work in the wetland area was not consistent

with the Section 404 agricultural exemption under 33 C.F.R. Section 323.4(a), and that the "recapture provision" under 33 C.F.R. Section 323.4(c) applied.

31.     On March 20, 2018, the COE issued a Notice of Violation/Cease and Desist letter to Ms. Cooke-Andrews and Mr. Andrews, which (1) recounted the multiple notices issued by the COE since 2010, that the Site contained wetlands under CWA jurisdiction; (2) stated its belief that dredged and/or fill material had been discharged into jurisdictional wetlands without authorization; and (3) directed the landowners to cease all work in COE jurisdictional wetlands. *See* Exhibit G.

32.  I conducted a search of our Ombil Regulatory Module database and determined that we had no record of permit authorizations issued for the reported locations or the existing or prior property owners. Consequently, to the best of my knowledge, no member of the Cooke-Andrews family, nor any consultants, contractors, or other representatives acting on their behalf, applied for or received a CWA Section 404 permit from the COE for the above-described activities.

I, CLARINA M. ROSE, declare under penalty of perjury that the foregoing is true and correct based upon my personal knowledge.

ROSE.CLARINA.M.1   Digitally signed by
245764703          ROSE.CLARINA.M.1245764703
                   Date: 2019.05.01 13:15:28 -04'00'

Clarina M. Rose
U.S. Army Corps of Engineers
New England District Regulatory Division
696 Virginia Road
Concord, MA 01742
(978) 318-8306

EXHIBIT A

| | |
|---|---|
| **From:** | Sheehan, MJames NAE |
| **To:** | Riccio, Michael S NAE |
| **Cc:** | Ladd, Ruth M NAE; Desista, Robert J NAE |
| **Subject:** | Andersons Estates -- vicinity 216 Northrop Road, Wallingford, Connecticut |
| **Date:** | Tuesday, April 19, 2011 1:50:32 PM |
| **Attachments:** | Impacts.pdf<br>Andrews.kmz |

RE: Jeff and Lynn Cooke Andrews

Present during site visit on Friday, April 15, 2011 (Approx. 10:00AM – 14:00PM):
Jeff Andrews and daughter Ellery – Interested Parties (property ownership)
Michael S. Riccio – CENAE-R-PEB, Corps Regulatory Project Manager
M. James Sheehan – CENAE-R-PT, Senior Biologist/Soil Scientist

Also present:
William T. Salg
Supervising Forest Products Harvester
(CTDEP SFPH 000271 Expires: 3/1/2013)
P.O. Box 304
Northford, CT 06472
(203) 484-9942

A series of photographs documenting the site visit and an index are located at: <R:\Branch B\RICCIO\Anderson Estates>

Wetlands are illustrated on Sheets SD-2 and SD-3 of the Subdivision Map (Revised August 27, 2003). That delineation, by Rodd Dryfoos, likely reflects the extent of the poorly drained Wilbraham soils map unit in accordance with Connecticut's wetland statutes; therefore, I recommend that copies of the delineator's field notes be obtained to corroborate my estimate that these are also a reasonable representation of the extent of the federally-regulated wetlands on the subject property.

The impacts associated with fill, excavation, and grubbing are estimated to be approximately 1.3 acres and are illustrated in attached sketch. All discharges of dredged and/or fill material associated with those impacts is regulated under section 404 of the Clean Water Act. Mr. Andrews stated that he believed that his work was exempt from federal regulation. However, his interpretation appears to be contrary to the instructions found at 33 CFR Part 323.4(c) – these are commonly referred to the "recapture provisions" of the Act.

I recommend Interim Protective Measures be coordinated with EPA in accordance with 33 CFR 326.3 (g) to prevent bare soil from eroding into unnamed tributaries of the Farm River Stream, which eventually flows through Lake Saltonstall and into Long Island Sound. Those measures may include planting and establishing native grasses along the banks of the constructed pond and spoil area. A small woodchip dike has been constructed at the downstream end of the pasture fill; maintenance of that dike should continue until the soil has been stabilized with native grasses and forbs.

The Environmental Resources Section remains available to you to help you resolve this unauthorized action and provide technical assistance during any subsequent permitting.

M. James Sheehan
Senior Biologist/Soil Scientist
978-318-8696

EXHIBIT B

| | |
|---|---|
| **From:** | Riccio, Michael S NAE |
| **To:** | "lecandrews@yahoo.com" |
| **Cc:** | Desista, Robert J NAE; Mccarthy, Jennifer L NAE |
| **Subject:** | 216 Northford Road Site visit 6-3-11 (UNCLASSIFIED) |
| **Date:** | Friday, June 10, 2011 12:53:00 PM |

Classification: UNCLASSIFIED
Caveats: NONE

Jeff,

This message is to just confirm what we discussed last week and to request that you provide us with a timetable for resolving the violation at 216 Northford Road in Wallingford, Connecticut.

We discussed that,

1. The stockpile of material dredged from the pond was placed in wetlands, which is a violation of the Clean Water Act.  In order to resolve this violation, you agreed to remove the dirt and return the area to its original wetland grade.

2. The wetlands on the Northford side of the property (with wood chip dike) have been regraded and therefore are in violation of the Clean Water Act.  You agreed to restore the wetlands in this area by reestablishing the original wetland grade and stabilizing it with wetland vegetation. The wood chip dike should remain in place for the time being to prevent erosion and sedimentation.

3. The agricultural exemption in Section 404 of the Clean Water Act does not include the conversion of non-agricultural wetlands to agricultural land. Therefore you would need a permit from this office in order to grub, stump, clear, or do any other regulated work that would change the topography of wetlands on your property, in order to turn them into agricultural fields or irrigation ponds, as you've told us is your intent.

4. If you wish to obtain a permit to convert those wetlands on your property to agricultural fields or irrigation ponds, you must submit to us a permit application that includes an explanation of the work you wish to conduct, the amount of wetlands you would be impacting, the need for that work, and the reason why you cannot avoid impacting those wetlands. We also explained that it is not likely we would be able to issue a permit for large-scale wetland impacts on the property.

5. Although we do not foresee this office issuing a permit for all of the new work you've described, we DO believe it may be possible to issue an after-the-fact permit for the pond that has already been excavated, if you provide us with an explanation of the need for the pond, the reason it was placed where it was placed, a plan to resolve the outstanding violations, and a tolling agreement (copy attached). Some additional wetland impacts may also be permitted, such as the additional small pond you described.

6. The clear-cutting conducted in wetlands on your property does not constitute a violation at this time, and would not, provided you do not perform land disturbing (such as stumping, grubbing, grading etc).

We would like to work with you to resolve the existing violations and potentially issue an after-the-fact permit for the existing pond. I/we are sensitive to your desire to convert the land to agricultural use and are willing to work with you to resolve the outstanding violations and authorize some work in wetlands through the permit process. I do have to remind you though that this office, as well as other appropriate regulatory agencies, is prepared to pursue enforcement action if you do not proactively resolve these issues.

Please provide us with a tangible plan and schedule for providing us the information requested and restoring the wetland areas discussed above.

Thank you much, have a good weekend.

Michael Riccio
U.S. Army Corps of Engineers
Regulatory Division
Phone: 978.318.8685
Fax: 978.318.8303


Classification: UNCLASSIFIED
Caveats: NONE



**DEPARTMENT OF THE ARMY**
NEW ENGLAND DISTRICT, CORPS OF ENGINEERS
696 VIRGINIA ROAD
CONCORD, MASSACHUSETTS 01742-2751

EXHIBIT C

REPLY TO
ATTENTION OF

July 1, 2011

Regulatory Division
CENAE-R-PEB
File Number: NAE-2010-0802

Jeff Andrews
216 Northford Rd
Wallingford, CT 06492

Dear Mr. Andrews:

This letter is to follow up on Mike Riccio's e-mail message of June 10, 2011, to confirm what we discussed during our site visit on June 2, 2011, and to formally request that you provide us with a schedule for resolving the violation at 216 Northford Road in Wallingford, Connecticut.

During our visit we discussed that;

1.   The stockpile of material dredged from the pond was placed in wetlands, which is a violation of Section 404 of the Clean Water Act. In order to resolve this violation, you agreed to remove the stockpile and return the area to its original wetland grade.

2.   The wetlands on the Northford side of the property (with wood chip dike) have been regraded and therefore are in violation of Section 404 of the Clean Water Act. You agreed to restore the wetlands in this area by re-establishing the original wetland grade and stabilizing it with wetland vegetation. The wood chip dike should remain in place to prevent erosion and sedimentation, but should be removed once the site has re-vegetated.

3.   The agricultural exemption in Section 404 of the Clean Water Act does not include the conversion of non-agricultural wetlands to agricultural land or open water. Therefore you would need a permit from this office in order to grub, stump, clear, or do any other regulated work that would result in the movement of soils or the change the topography of wetlands on your property; specifically converting them into agricultural fields or irrigation ponds, as you've told us is your intent.

4.   If you wish to obtain a permit to convert those wetlands on your property to agricultural fields or irrigation ponds, you must submit to us a permit application that includes an explanation of the work you wish to conduct, the amount of wetlands you would be impacting, the need for that work, and the reason why you cannot avoid impacting those wetlands. We also explained that it is not likely we would be able to issue a permit for large-scale wetland impacts on the property.

5.      Although we do not foresee this office issuing a permit for all of the new work you've described, we do believe it may be possible to issue an after-the-fact permit for the pond that has already been excavated, if you provide us with an explanation of the need for the pond, the reason it was placed in its current location, a plan to resolve the outstanding violations and a tolling agreement (copy attached). Some additional wetland impacts may also be permitted, such as the additional small irrigation pond you described.

6.      The clear-cutting that was conducted in wetlands on your property does not constitute a violation at this time, and would not, provided you do not perform land disturbing activities, such as stumping, grubbing, regrading, etc.

We would like to work with you to resolve the existing violations and potentially issue an after-the-fact permit for the existing pond. We are sensitive to your desire to convert the land to agricultural use and are willing to work with you to resolve the outstanding violations and potentially authorize some of the work described above, through the proper permitting process. Accordingly, please provide us with a schedule for submitting the information requested herein, and submit a plan for restoring the impacted wetlands within 7 days of receiving this letter.

We would like to remind you that the outstanding violations must be resolved before any permits can be issued, and if the violations are not resolved in a timely manner, we are prepared to pursue an enforcement action, including referring the case to the U.S. Environmental Protection Agency or the U.S. Department of Justice. If you have any questions regarding this matter, please contact Mr. Michael Riccio at (978) 318-8685.

Sincerely,

Jennifer McCarthy
Chief, Regulatory Division

Attachments
Copy Furnished
SAS

Denise Leonard
U.S. EPA Region 1
5 Post Office Square Suite 100
Boston, MA   02109

Erin O'Hare
Environmental and Natural Resources Planner
Wallingford Town Hall
45 South Main Street
Wallingford, CT   06492

Janis Small
Town Attorney
Wallingford Town Hall
45 South Main Street
Wallingford, CT   06492

## TOLLING AGREEMENT BETWEEN UNITED STATES
## ARMY CORPS OF ENGINEERS AND JEFF ANDREWS

WHEREAS, the United States of America, on behalf of the United States Army Corps of Engineers (Corps) may file a complaint against Jeff Andrews residing at 216 Northford Road, Wallingford, Connecticut ("potential defendant(s)") for, inter alia, alleged violations of Sections 301(a), 309, & 404 of the Clean Water Act ("CWA"), 33 U.S.C. Sections 1311(a), 1319, & 1344 and/or Section 9, 10, or 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. Sections 401, 403, or 407, and/or Ocean Dumping Act Sections 101 and/or 103 (33 U.S.C. 1411, 1413), at a site commonly known as 216 Northford Road.

WHEREAS, the purpose of any such complaint would be to obtain appropriate injunctive relief and to impose appropriate civil or criminal penalties for potential defendant'(s) alleged violations of the statute(s) cited above;

WHEREAS, the Corps accepted an after-the-fact (ATF) permit application from the potential defendant(s) in an attempt to settle the above claims;

WHEREAS, both parties believe that their interests will best be served by continuing the ATF permit process without the disruption that might be occasioned should the United States file a complaint in the immediate future;

AND WHEREAS both parties acknowledge the requirement found at 33 C.F.R. 326.3(e) for an applicant for an ATF permit to provide a signed tolling agreement;

THEREFORE, the United States and potential defendant(s) stipulate and agree as follows:

1.   The United States and potential defendant(s) agree that the time between the acceptance by the Corps of the ATF permit application and the final Corps decision (as defined at 33 CFR 326.3), *plus one year thereafter,* will not be included in calculating any statute of limitations that might be applicable to the alleged statutory violation(s) described above. Potential defendants agree not to assert, plead, or raise in any fashion on behalf of any party, whether by answer, motion, or otherwise, any defense or avoidance based on the running of any statute of limitations that may apply during that period or any defense or avoidance based on laches or other principle concerning the timeliness of commencing a civil action, based on the failure of the United States to file its complaint during that period.

2.   Potential defendants further agree not to transfer the property in question during the pendency of this tolling agreement nor during the pendency of any civil action brought as

## TOLLING AGREEMENT BETWEEN UNITED STATES
## ARMY CORPS OF ENGINEERS AND JEFF ANDREWS

described above, without first notifying the United States and giving the United States a reasonable opportunity to oppose such transfer.

    3.   Nothing in this tolling agreement shall restrict or otherwise prevent the United States from filing a complaint regarding any alleged statutory violation(s) not described above, at any time.

    4.   This tolling agreement does not constitute any admission of liability on the part of potential defendants; nor does it constitute any admission or acknowledgment on the part of the United States that any statute of limitations has run or that any statute of limitations is applicable to the statutory claims described above.

    5.   This tolling agreement contains the entire agreement between the parties, and no statement, promise or inducement made by any party to this agreement, or any agent of such parties, that is not set forth in this agreement shall be valid or binding. This tolling agreement may not be enlarged, modified or altered except in writing signed by the parties. This tolling agreement may be executed in counterparts.

FOR the United States of America:

_____    _____

John Astley                                   DATE
District Counsel
New England District, U.S. Army Corps of Engineers

FOR ("potential defendant(s)")

_____    _____

Jeff Andrews                                   DATE
Property Owner

EXHIBIT D

## Riccio, Michael S NAE

**From:**       LYNN ANDREWS [lecandrews@yahoo.com]
**Sent:**       Saturday, July 30, 2011 8:45 PM
**To:**         Riccio, Michael S NAE
**Subject:**    Re: FOIA request (UNCLASSIFIED)

michael sorry for delay busy here correct on both hope all is well with you thanks jeff

--- On Wed, 7/13/11, Riccio, Michael S NAE <Michael.S.Riccio@usace.army.mil> wrote:

> From: Riccio, Michael S NAE <Michael.S.Riccio@usace.army.mil>
> Subject: FOIA request (UNCLASSIFIED)
> To: lecandrews@yahoo.com
> Date: Wednesday, July 13, 2011, 4:10 PM
> Classification: UNCLASSIFIED
> Caveats: NONE
>
> Hey Jeff,
>
> Did you have any luck with finding the information you were looking
> for on the FOIA website? Just so I'm clear on what it is you're
> looking for and so I'm not leading you astray, you're looking for any
> info we have in our file from Erin O'Hare and anyone else from the
> Town of Wallingford, as well as any of our own information in the
> file?
>
> Also I wanted to send you an e-mail to confirm that you're not
> planning on signing our tolling agreement or trying to resolve the
> existing violations through our regulatory process because you're
> arguing that you're agriculturally exempt.
>
> Thanks. Have a good afternoon; stay dry.
>
>
> Michael Riccio
> U.S. Army Corps of Engineers
> Regulatory Division
> Phone: 978.318.8685
> Fax: 978.318.8303
>
>
>
> Classification: UNCLASSIFIED
> Caveats: NONE
>
>
>



**DEPARTMENT OF THE ARMY**
NEW ENGLAND DISTRICT, CORPS OF ENGINEERS
696 VIRGINIA ROAD
CONCORD, MASSACHUSETTS 01742-2751

EXHIBIT E

REPLY TO
ATTENTION OF

August 23, 2013

Regulatory Division
CENAE-R-PEB
File Number: NAE-2010-0802

Jeff Andrews
216 Northford Rd
Wallingford, CT   06492

Dear Mr. Andrews:

This letter is to follow up on Michael Riccio's telephone conversation with you on August 21, 2013, during which he requested permission to access 216 Northford Road in Wallingford, Connecticut due to recently reported activities occurring on that property. Specifically, he wanted to know who the point of contact was in order to obtain permission to visit the property, given that we understand the title was recently transferred from you to your children. During our telephone conversation, you acknowledged that you were still the appropriate point of contact and granted us permission to access the site.  However, because you asked that we put our request in writing, we're writing to you to formally request permission to access the abovementioned property within the next two weeks. Michael and I would be present, as you acknowledged that we specifically would be allowed on site.

Please confirm that you've received this letter as soon as possible either by contacting me at (978) 318-8330 or Michael at (978) 318-8685, so that we can discuss a mutually acceptable date to visit the property.

Sincerely,

Jennifer McCarthy
Chief, Regulatory Division

Attachments
Copy Furnished
SAS

Denise Leonard
U.S. EPA Region 1
5 Post Office Square Suite 100
Boston, MA   02109

Erin O'Hare
Environmental and Natural Resources Planner
Wallingford Town Hall
45 South Main Street
Wallingford, CT   06492

Janis Small
Town Attorney
Wallingford Town Hall
45 South Main Street
Wallingford, CT   06492

Rose Exhibit F

Corps 11-6-17 Attachment 1



## WETLAND AND WATERCOURSE
## VIOLATION ASSESSMENT REPORT

### 216 NORTHFORD ROAD
### WALLINGFORD, CONNECTICUT

November 10, 2010

MMI #1585-33-1



*Prepared for:*

Town of Wallingford
45 South Main Street
Wallingford, CT  06492



*Prepared by:*

MILONE & MACBROOM, INC.
99 Realty Drive
Cheshire, CT  06410
203-271-1773
www.miloneandmacbroom.com

MILONE & MACBROOM®



# TABLE OF CONTENTS

Page

1.0   INTRODUCTION.................................................................................................. 1

2.0   FIELD INVESTIGATION.................................................................................... 2

    2.1   Existing Conditions.............................................................................. 2
    2.2   Historic Conditions .............................................................................. 8
    2.3   Wetland and Watercourse Impacts....................................................... 9
    2.4   Mitigation/Restoration Recommendations....................................... 11

3.0   CONCLUSION ................................................................................................... 13

MILONE & MACBROOM®

## 1.0   **INTRODUCTION**

Milone & MacBroom, Inc. (MMI) has been retained by the Town of Wallingford to provide guidance regarding an alleged ongoing wetland and watercourse violation located at 216 Northford Road in Wallingford, Connecticut.  In July and August 2009, owners of said property began construction of a pond along an unnamed tributary to the Farm River.  The owners did not submit any local, state, and/or federal inland wetland permits for construction of the pond and/or other associated construction activities.  On August 7, 2009, the town's Wetland and Watercourse Commission issued a cease and desist on said property for the pond construction activities.

The town has provided MMI with the following documents for review:

- → Memorandum from Erin O'Hare to Janis Small regarding 216 Northford Road – Lynne Cooke Andrews – cease and desist dated June 4, 2010
- → Letter from South Central Regional Water Authority regarding "Complaint of Dirty Water" sent to Erin O'Hare dated August 11, 2009
- → Photo Logs of the pond under construction taken by town staff on August 6, 2009
- → Letter from Soil Resource Consultants regarding "Verification of Wetland Delineation Lots 1-4 – Andrew Estates – Maria Todd Road – Wallingford, CT" dated November 4, 2003
- → Sheet SD-1 of the Anderson Estates – Phase 1 Subdivision dated September 15, 2003 prepared by Nafis & Young Engineers, Inc.
- → Report entitled "2003 Wetlands Survey – Andrews Subdivision" prepared by Marine and Freshwater Research Service dated May 15, 2003
- → Soils Report entitled "Anderson Property – Wallingford – North Branford" prepared by Dryfos Environmental Consulting LLC dated July 17, 2001

The following report provides a summary of our review of the above information and our observations of current site conditions, discusses wetland and watercourse impacts, and provides



general recommendations for mitigating and restoring impacted wetlands and watercourses within the project site.

## 2.0   FIELD INVESTIGATION

On October 20, 2010, an MMI water resource engineer and wetland scientist accompanied by the town conducted an on-site investigation of an excavated pond, stockpile area, and other related construction activities on site with town staff. The project site is located just north of the town line between Wallingford and North Branford. The site is located within the unnamed tributary of the Farm River watershed (Drainage Basin No. 5112-03-1) and has a drainage area of approximately 0.82 square miles (531 acres). A watershed map in relation to the project site is attached as Figure 1. The project site is not located in a Federal Emergency Management Agency (FEMA) flood zone. The project site, the unnamed tributary, and the Farm River are all located within a South Central Water Authority public drinking water supply watershed. The unnamed tributary is designated by the Connecticut Department of Environmental Protection (CTDEP) as a Class AA surface water resource.

Class AA inland surface waters are known or presumed to meet water quality criteria that can support designated uses such as existing or potential public drinking water supply, fish and wildlife habitat, recreational use, agricultural and industrial supply, and other purposes. Recreation uses may be restricted. The tributary most likely supports a cold-water fishery and important macroinvertebrate habitat.

### 2.1   Existing Conditions

The project site is located at the base of a valley and occurs within and adjacent to the unnamed tributary wet meadow/emergent marsh wetlands. According to the NRCS soil survey map, the project site is located within areas containing both wetland and upland soils.

MILONE & MacBROOM®

The following soil series are found within the project site.  The soils are illustrated in Figure 2.

→ Bash Silt Loam – Somewhat poorly drained alluvial floodplain soil (Connecticut wetland soil)

→ Wilbraham and Menlo Complex – Poorly and very poorly drained soil (Connecticut and federal wetland soil)

→ Branford Silt Loam – Well drained soil (upland soil)

→ Ludlow Silt Loam – Moderately well drained soil (upland soil)

The man-made pond is approximately 0.4 acres in size and is surrounded by an earthen berm that is moderately vegetated with young weedy species. The pond is not in line with the existing unnamed tributary but is hydrologically connected to the watercourse via an outlet channel located along the southeast portion of the pond.  Soil that has been excavated from the pond was stockpiled at several locations.



**Existing pond looking northeast toward primary stockpile**

The primary stockpile area is located approximately 60 feet east of the pond and unnamed tributary while smaller stockpiles occur north of the pond, and additional material has been spread around the periphery of the pond.  Water quality within the pond appears to be fair as evidenced by the cloudy coloration.  The cloudy coloration is due to suspended sediment, including plankton.  The pond appears to have been constructed within the Bash Silt Loam soil series, which is a state-regulated floodplain soil.

MILONE & MACBROOM®



Unnamed Tributary of
Farm River

Approximate Area of
Clearcutting Operations

Ludlow
Silt Loam

Wilbraham and
Menlo Soils

Branford Silt Loam

Bash
Silt Loam

Primary Stockpile
Location

Wethersfield Loam

Cheshire Sandy Loam

Wilbraham and
Menlo Soils

Approximate
Pond Location

Branford Silt Loam

| Engineering, Landscape Architecture and Environmental Science **MILONE & MACBROOM®** | **216 Northford Road** **Wetland Impact Investigation** | LOCATION: **Wallingford, CT** | |
|---|---|---|---|
| 9 Realty Drive Cheshire, Connecticut 06410 (203) 271-1773 Fax: (203) 272-9733 www.miloneandmacbroom.com | MMI#: 1585-33-1 MXD: H:watershed.mxd SOURCE: DEP Bulletin No.40 | N | **NRCS Soils** **Location Map** | DATE: November 2010 SCALE: 1:3,600 | SHEET: **Figure 2** |

Contributing Watershed
(531 acres)

Unnamed Tributary
to Farm River

Primary Stockpile
Location

Approximate
Pond Location

Wallingford
North Branford

| | 216 Northford Road | LOCATION: | |
| Engineering, Landscape Architecture and Environmental Science MILONE & MACBROOM® ) Realty Drive Cheshire, Connecticut 06410 (203) 271-1773 Fax: (203) 272-9733 www.miloneandmacbroom.com | **Wetland Impact Investigation** | **Wallingford, CT** | |
| | MMI#: 1585-33-1 MXD: H:watershed.mxd SOURCE: DEP Bulletin No.40 | **Contributing Drainage Basin Map** | DATE: November 2010 SCALE: 1:12,000 | SHEET: **Figure 1** |

Upstream of the site, the tributary has a Rosgen Type C4 alluvial channel that is approximately 10 feet wide and is in good condition. Within the project site, the unnamed tributary that flows parallel to the pond has a width that varies from eight to 10 feet. The tributary is perennial and has a substrate consisting of coarse sand, gravel, cobbles, and stones. Through the project site, the riparian vegetation ranges from



**Unnamed tributary looking upstream**

moderate to high density. Pussy willow, speckled alder, reed canary grass, devil's beggar tick, soft rush, and other herbaceous vegetation dominate. There are a few larger trees along the left bank (facing downstream) including red maple, sycamore, and eastern red cedar. Dry reinforced concrete pipe (RCP) culverts were observed along the right bank (facing downstream) of the tributary. The pipes appear to be anchoring the bank along this section of the tributary. Additional piles of RCP are found along the north edge of the pond. It appears that the owner intended to install a stream crossing at the project site.

A secondary overflow channel was also documented near the southern edge of the pond. This channel primarily conveys floodflows back to the main channel. Some surface water was present within this overflow channel, but flow was minimal. The water within this overflow channel was discolored as evidenced by orange iron oxidation and oily sheen caused by manganese precipitation. Both iron oxidation and manganese precipitation are often attributed to recent disturbance of nearby soils.



**Overflow channel with cloudy orange-colored water.
Oily sheen is present as well.**

MILONE & MacBROOM®

Wet meadow/emergent marsh wetland pockets were observed north of the pond as well as south of the pond. Vegetation within these wetland pockets included blue vervain, soft rush, sensitive fern, joe-pye weed, monkeyflower, lurid sedge, reed canary grass, arrow leaved tearthumb, and jewelweed.



**Wet meadow/emergent marsh wetlands north of the pond**

Additional slope wet meadow wetlands were observed east of the existing pond and tributary. The primary stockpile area is located in the wet meadow wetland. The wet meadow/emergent marsh wetlands are located within the poorly and very poorly drained Wilbraham and Menlo complex. These wetland soils are regulated by both state and federal agencies.



**Primary stockpile located on slope wet meadow/emergent marsh wetland**

Scrub shrub/forested wetlands were observed north of the project site on adjacent open space land owned by the town.

There are no sediment and erosion controls (i.e., silt fence, haybales, straw wattles, erosion control matting, etc.) on site. Many of the areas that had been disturbed by the previous pond excavation activities, reportedly in July and August 2009, have become sparsely to moderately vegetated with weedy annual species. The primary stockpile still has barren side slopes, and rills

have formed (see above photo).  Erosion and deposition of material from this stockpile area are directed toward the unnamed tributary and wet meadow wetlands.

The vegetation that has colonized the disturbed areas within the project site may have resulted from someone seeding the area or may have germinated from an existing seed source within the stockpiled soil.  Most of the existing vegetation is considered annual and biennial weeds, which are classified as early colonizers of disturbed sites.

## 2.2    Historic Conditions

The following description of the historic conditions at the project site is based upon review of available aerial photography and subdivision plans.  The following aerial photograph illustrates the project site condition in winter 2008.  The 2008 aerial photograph shows that the project site was a combination of wet meadow wetland/ emergent marsh wetlands and upland meadows.  The upland and wet meadow areas were most likely managed (cut) once every couple of years because early successional shrubs and trees are absent in the 2008 aerial.



## 2.3    Wetland and Watercourse Impacts

It appears that the pond was constructed within a portion of the wet meadow/emergent marsh wetland system, so loss of valuable wetland habitat has resulted.  The project activities in relation to wetland boundaries flagged back in 2003 are depicted in Figure 3.  Excavated material from the pond was spread and stockpiled around the periphery of the pond, which buried additional areas of wetland as well.  The unnamed tributary has been filled along the right bank (facing downstream), and several culverts are found in the channel.  Besides filling wet meadow/emergent wetlands, it also appears that channel width and conveyance capacity of the unnamed tributary may have been impacted as a result of fill placed along both the right and left banks.  In addition, loss and manipulation of the localized floodplain have occurred, which could increase downstream flooding in the near future.  Water quality and macroinvertebrate habitat within the unnamed tributary are most likely being impacted by the lack of sediment and erosion controls on site (increased sediment loading), the oxidation of iron and manganese from recent soil disturbance (based on visual observation), and surface water discharges from the pond, which appears to have higher levels of suspended solids and plankton (based on visual observation of cloudy pond water).

A portion of the primary stockpile area east of the pond and tributary was placed within slope wet meadow wetlands.  The wetland soils are buried at this time.



It should be noted that in addition to the pond excavation, channel manipulation, and stockpiling of fill within wetlands someone has clear cut areas of forested/scrub shrub wetlands that are located northeast of the project site.  Large trees and shrubby vegetation have been cut and removed from

**Forested wetlands being cleared**

MILONE & MACBROOM®

the wetlands. Stumps and slash cuttings have been left within the wetlands. Herbaceous plants are beginning to sprout. These forested wetlands appeared to have been cleared during 2010 summer months as evidenced by the presence of brown-colored leaves still attached on cut branches and freshly cut stumps.

It is difficult to determine the total areal extent of wetland impact without appropriate base mapping; however, we estimate the wetland impacts to exceed one acre. These wetland and watercourse impacts exceed the Programmatic General Permit (PGP) thresholds for both the Connecticut Department of Environmental Protection (CTDEP) and the United States Army Corps of Engineers (USACOE). This means that state and federal permits are most likely required for the activities that are ongoing on this site. State and federal permits that may be required include:

→ CTDEP Diversion Permit

→ CTDEP 401 Water Quality Certification

→ USACOE 404 After the Fact Individual Wetlands Permit

## 2.4    Mitigation/Restoration Recommendations

Based on our assessment of the wetland and watercourse impacts, it is recommended that the owner of the property complete the following:

→ Install sediment and erosion control measures (i.e., silt fence) on site, specifically around existing stockpile areas and areas that are highly erodible.

→ Retain a professional wetland scientist, licensed surveyor, and professional engineer to complete new topographic survey of current conditions, assess wetland impacts, and prepare a long-term stabilization and use plan. New topographic mapping should include overlays of the former wetland boundary delineated back in 2003 so that actual wetland impacts can be calculated.

→ Prepare a wetland and watercourse mitigation plan that restores the wet meadow/emergent marsh system back to former conditions.



→ The mitigation plan shall include:

- Removal of **all** fill placed within wetlands
- Provision of a wetland and watercourse functions and values assessment in accordance with the United States Army Corps of Engineers Highway Methodology Workbook.
- Relocation of the pond outside of wetland soils with a properly engineered outlet structure
- Regrading of the site to former conditions
- Restoration of existing buried wetland soils (Organic content in topsoil shall be a minimum of six percent, and a minimum of six inches of topsoil must be present across the wetland.)
- Reestablishment of wet meadow/emergent marsh wetlands with New England Wetmix seed mix and herbaceous plugs
- Removal of culverts placed within the unnamed tributary
- Restoration of riparian zone vegetation (replanting of trees, shrubs, and herbaceous plants) and the localized floodplain
- Restoration of the existing unnamed tributary channel including the secondary overflow channel

→ Wetlands and watercourses shall be redelineated by a certified soil scientist on the entire parcel if forestry operations are to continue.  Excavated test pits will be required in areas that have been filled.

→ Determine the extent of tree clear cutting within the forested/scrub shrub wetlands.

→ Prepare a wetland mitigation plan for impacted forested/scrub shrub wetlands.

→ Prepare a wetland and watercourse permit application that identifies all future forestry, agricultural, and development plans and submit to the Wallingford Inland Wetland and Watercourse Commission.

→ Property owner and his/her consultant team shall contact both the CTDEP and USACOE regarding applicability of after-the-fact permits and other additional

mitigation requirements.  All correspondence with state and federal agencies shall also be sent to the local wetlands enforcement officer.

## 3.0   CONCLUSION

Overall, MMI believes that the wetlands on this property have been significantly impacted by unpermitted pond construction activities and the more recent tree clear cutting.  We have summarized our findings and provided a mitigation recommendations plan.  If the town and/or its local Wetland and Watercourse Commission have any questions regarding this report and/or our findings, please do not hesitate to call us at 203-271-1773.

Very truly yours,

MILONE & MACBROOM, INC.

James G. MacBroom, P.E.
Senior Vice President

Matthew Sanford, M.S./PWS #1677
Professional Certified Soil Scientist

Enclosures

1585-33-1-n910-rpt.doc

MILONE & MACBROOM®

# Rose Exhibit G



**DEPARTMENT OF THE ARMY**
US ARMY CORPS OF ENGINEERS
NEW ENGLAND DISTRICT
696 VIRGINIA ROAD
CONCORD MA 01742-2751

SENT VIA CERTIFIED MAIL

March 26, 2018

Regulatory Division
File No. CENAE-R-2010-00802

Lynn Cook & Jeffrey P. Andrews
216 Northford Road
Wallingford, Connecticut 06492

### NOTICE OF VIOLATION/CEASE & DESIST

Dear Mr. and Mrs. Andrews:

This letter is in reference to work that you are conducting on two parcels identified as 216 Northford Road, Wallingford, Connecticut and 69 Woods Hill Road (rear), North Branford, Connecticut (See attachments A and B). These locations are collectively known as the "Site" or "Area of Concern" throughout this correspondence. The work referenced is the discharge and redeposit of mineral and organic soil material, manure, wood chips, stumps, debris, and/or other dredged or fill materials, into wetlands and waterways tributary to the Farm River between March 2010 and October 2017.  The Farm River, its tributaries, and adjacent wetlands are regulated by the Corps of Engineers (Corps) pursuant to Section 404 of the Clean Water Act (CWA), 33 U.S.C. 1344.  Our records indicate that you are a responsible party associated with this activity, either as a property owner or as a person performing or causing the performance of this work. The location of wetlands is depicted on the attached Google aerial photograph (see attachment C). The purpose of this letter is to identify what we believe to be unlawful discharges into wetlands and/or waterways without Corps authorization, and to seek information concerning the discharge activities described above.

Section 404 of the CWA prohibits discharges of dredged or fill material into waters of the United States and their adjacent wetlands unless the work has been authorized by Department of the Army permit. Please be aware that CWA violations may result in administrative penalties, civil penalties of up to $52,414 per day for each violation. Every day unauthorized fill remains in place is a separate day of violation. Injunctive relief, including restoration of the area to its pre-violation condition may also be required. The Corps and the U.S. Environmental Protection Agency (US EPA) share enforcement responsibilities under the CWA. Consequently, the details of your case and the work identified at the above-referenced sites have been shared with the US EPA.

Our files indicate that you were informed of our jurisdiction over these wetlands and/or waterways in writing on May 1, 2010; March 17, 2011 and May 19, 2011. You were also informed orally of the need to obtain a Corps permit for work within them on April 14, 2011; June 2, 2011, June 10, 2011 and in writing on July 1, 2011. **You are hereby _directed to cease and desist_ any further work that includes filling, excavation, grading or mechanized land clearing within areas regulated by the Corps of Engineers, until appropriate authorizations have been obtained.**

Federal regulations provide that we investigate unauthorized work that has occurred in areas subject to our jurisdiction. Consequently, **we _request that you provide us with authorization to enter the properties identified above_** as the Site for the purposes of wetland/waterway/soil characterization, investigation of work in or around aquatic resources and assessment of unpermitted activity in waters or wetlands. Please fill out the enclosed "Authorization to Enter Property" form and return it to us **by close of business April 20, 2018**.

Additionally, we request that you provide us with information concerning the discharge and redeposit of dredged and/or fill material into wetlands and waters at the site. To assist us in this investigation please respond, in writing and complete detail, to each of the following questions:

1. Provide the name of all persons, or entities, that currently have or have possessed ownership interest in the parcel(s) identified above since 2008. This information should include the name, residential address, telephone number, the date that the person acquired interest in the properties and the person from whom the ownership interest was acquired.

2. Describe the use of the Site since you acquired ownership interest in one, or both of, the parcels; also identify the current use and describe all intended future uses for the Area of Concern.

3. State whether you have placed dredged or fill material as discharge into wetlands or waterways anywhere on the Site. Please use Attachments A through C to depict those areas where you placed fill. For each one of the parcels associated with this work please estimate the footprint (area in square feet or acres) of impact to waters and or wetlands.

4. Identify who was responsible for obtaining a Corps permit for this work. If you believe that a Corps permit was not required, please provide your specific reasons for such belief.

5. Identify the types of equipment used, the operator(s), and the ownership thereof, to excavate, grade, clear vegetation, remove stumps or discharge fill or dredged material at the Site. Be specific as to the dates that each of the above activities was performed, and the location.

6. Provide us with a list of state, local or federal permits that you received or were required to obtain for the work at the site.

7. Provide a list of all consultants, engineers, soil scientists, contractors and subcontractors (including name, mailing address and telephone number) that undertook work at the Site.

8. If material was brought onto, or delivered, to the site please provide the source of this material (including name, mailing address and telephone number), the type, amount and location where the material was placed.

9. If the Site was the subject of property survey, wetland delineation or boundary documentation prepared by a third party licensed engineer/firm provide us with a copy of these documents.

10. Provide copies of all correspondence including, but not limited to, any permits or applications for permits with any local, state or federal agency pertaining to the placement, retention or removal of dredged or fill material or work occurring in wetlands or waterways at the site.

No additional regulated work within our jurisdiction may be started or allowed to continue until you receive a permit signed by the District Engineer or his authorized representative. Any such future work without a permit will be considered willful, repeated, or flagrant per 33 CFR Part 326.5(a).

Please respond to our request for information within thirty (30) days of the date of this letter. If you fail to respond to this notification or to provide the requested information within the specified time frame we may seek immediate legal action to halt any ongoing activity, conduct our investigation with the information available to us and take enforcement action as allowed by federal law. Our action may include referral to the U.S. Attorney's Office or the Environment and Natural Resources Division of the U.S. Department of Justice.

In summary, please provide the information requested above, and any other information that you believe is pertinent to this situation, within thirty (30) days of the date of this letter. We appreciate your cooperation and assistance in resolving this

matter. Please note that this letter will not foreclose our options to initiate appropriate legal action.  If you have any questions, please contact Ms. Cori M. Rose of my Regulatory Staff at (978) 318-8306.

Sincerely,

William M. Conde
Colonel, Corps of Engineers
District Engineer

Copies Furnished:

Denise Leonard, US EPA New England, Region I, OEP Wetland Enforcement, leonard.denise@epa.gov

Brian Golembiewski, Connecticut DEEP – LWRD, Land Use Review, Southeast Region, 79 Elm Street, Hartford, CT  06106 brian.golembiewski@ct.gov

Kevin Zawoy, CT DEEP –LWRD, Enforcement, 79 Elm Street, Hartford, Connecticut 06106 kevin.zawoy@ct.gov

Janis Small, Wallingford Law Department, 45 South Main Street, Room 308, Wallingford, CT 06492 lawdept@wallingfordct.gov

Erin O'Hare, Environmental and Natural Resources Planner, Wallingford Town Hall 45 South Main Street, Wallingford, CT 06492



**US Army Corps
of Engineers** ®
New England District

CENAE-R-PRB
File No. NAE-2010-00802
Regulatory Division

**ADMINISTRATIVE RECORD**        **File No.** NAE-2010-00802

**SUBJECT:** Authorization to Enter Property

I _____ [name of <u>at least one</u> individual with ownership interest and

signature below], hereby give the staff of the U.S. Army Corps of Engineers, New England

District permission to enter upon my property located at 16 Northford Road, Wallingford,

Connecticut and 69 Woods Hill Road (rear), North Branford, Connecticut, to conduct a site

review for the purposes of:

- Assessment for wetland jurisdiction

-  Wetland or waterway resource characterization

- Permit application evaluation

- Assessment with permit compliance or unauthorized activity investigation

- Investigation of work in or around wetland/waterway resources


| Owner/Print Name | Signature | Date |
|---|---|---|
| Owner/Print Name | Signature | Date |
| Owner/ Print Name | Signature | Date |


**RETURN by EMAIL or Fax TO:**  <u>cori.m.rose@usace.army.mil</u>,
Facsimile: 978) 318-8303

_____ CHECK HERE IF YOU WISH TO BE PRESENT, OR HAVE YOUR DESIGNATED
REPRESENTATIVE(S) PRESENT DURING THE VISIT (we will provide you with at least
10-days forewarning/notification of the intended site visit).

NAE-2010-00802
2010 AERIAL - 216 NORTHFORD
ROAD & 69 WOODS HILL ROAD REAR

ATTACHMENT A



Source: Google Earth (accessed September 12, 2017)
Created by: Cori M. Rose, USACE
Date: September 2010

JEFF ANDREWS 216 NORTHFORD ROAD AND 69 WOODS HILL RD REAR (Map72 BlockB Lot53)



NAE-2010-00802
2010 AERIAL - 216 NORTHFORD ROAD AREA OF CONCERN

ATTACHMENT C



Source: Google Earth (accessed September 12, 2017)
Created by: Cori M. Rose, USACE
Date: September 2010