## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-1300 (JCH) |
| v. | : | |
| | : | |
| JEFFREY ANDREWS, ET AL., | : | JUNE 11, 2021 |
|     Defendant. | : | |

## RULING RE: DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND MOTION TO SUPPRESS (DOC. NO. 71)

### I.      INTRODUCTION

Currently pending before this court is a Motion to Dismiss for Lack of Jurisdiction and Motion to Suppress (Doc. No. 71) filed by the defendants, Jeffrey Andrews, Lynn Cooke Andrews, Wesley W. Andrews, Colton C. Andrews, and Ellery W. Andrews (hereinafter collectively "the Andrewses"). In the portion of their Motion seeking dismissal for lack of jurisdiction, the Andrewses argue that this court lacks jurisdiction to hear the Clean Water Act ("CWA") claims brought by the United States against defendants Wesley W. Andrews, Colton C. Andrews, and Ellery W. Andrews because they are not "owners" under the CWA. Defendants' Memorandum in Support ("Mem. In Supp.") (Doc. No. 71-1) at 3-16. Further, the defendants move to dismiss on the grounds that the United States "has failed to show by a preponderance of the evidence", Mem. In Supp. at 1, that the property in question, known as the Cooke-Andrews Property, contains wetlands as defined under federal law, and that the defendants have filled or dredged those wetlands without a permit, id. at 1-2. Finally, defendants argue

1

that this court lacks jurisdiction because there is a five-year statute of limitations to commence a civil CWA enforcement action. Id. at 31-40.

The Andrewses' second basis in support of their Motion to Dismiss rests in large measure on the arguments set forth in their Motion to Suppress and the granting of that Motion. For that reason, the court addresses the Motion to Suppress aspect of the Andrewses' Motion before addressing the Motion to Dismiss for Lack of Subject Matter Jurisdiction.

The United States has filed two Memoranda in Opposition. (Doc. Nos. 72 and 73).

## II.   BACKGROUND

United States filed its Complaint against the Andrewses seeking injunctive relief and civil penalties under sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and 1319(d), in connection with the Andrewses' alleged discharge of pollutants into waters of the United States without a permit at the Cooke-Andrews Property, and failure to respond to the Environmental Protection Agency's ("EPA") information requests. Complaint (Doc. No. 1). The Complaint asserts subject matter jurisdiction under sections 1331, 1345, and 1355 of title 28 of the United States Code. Id.

The Andrewses filed their initial Answer to the Complaint and then subsequently amended their answer and added counterclaims. See Amended Answer (Doc No. 35). Following the filing of a Motion to Dismiss Counterclaims by the United States (Doc. No. 52), the Andrewses moved to file a second amended answer. Motion for Leave to File Second Amended Answer (Doc. No. 63). After the court granted that Motion, Order (Doc No. 67), the defendants filed their Second Amended Answer (Doc No. 70), in which they withdrew their counterclaims and asserted certain affirmative defenses.

Simultaneously, the Andrewses filed the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction and to Suppress Evidence. Motion (Doc No. 71).

The day after filing its Complaint, the United States moved for a preliminary injunction. Motion for Preliminary Injunction ("Mot. for Prelim. Inj.") (Doc. No. 8). After several motions to extend, Andrewes filed their Memorandum in Opposition (Doc. No. 25). The court then held a hearing on December 16, 2020, and subsequently granted in part the United States' Motion for Preliminary Injunction, as stated on the record. See Transcript of Record Ruling (Doc. No. 51).

### III. MOTION TO SUPPRESS[1]

#### A. Standard of Review

Andrews seek to suppress any evidence obtained by the United States during its search of their property pursuant to the warrant signed by the Honorable William I. Garfinkel. The warrant that was issued by then-Magistrate Judge Garfinkel on May 8, 2019, is an "Administrative Warrant and Order." Mot. for Prelim. Inj. at 8. Most non-consensual, administrative searches, such as the one at issue here, must be authorized by a warrant. Marshall v. Barlow's, Inc., 436 U.S. 307, 25 (1978). The standard for issuance of such a warrant is less stringent than the probable cause standard required for criminal search warrants. Id. at 320. "Probable cause in the criminal law sense is not required for purposes of an administrative search pursuant to a warrant that is

---

[1] The Andrewses moved to suppress pursuant to Fed. R. Crim. P. 12(b)(3)(C). The Federal Rules of Criminal Procedure do not apply in this civil action. The court views the Andrewses' Motion to Suppress as more akin to a motion in limine to exclude certain evidence at trial. Rather than deny it on the ground that it rests on an inapplicable Rule, as the United States suggests, the court will address the merits of the Andrewses' argument that the warrant was obtained with a defective application.

3

authorized by statute." Wisoff v. City of Schenectady, 670 F. App'x 724, 725 (2d Cir. 2016) (brackets and internal quotations omitted) (quoting Marshall, 436 U.S. at 320-21).

In the criminal context, the standard for probable cause for the issuance of a warrant requires that there be "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Black, 845 F. App'x 42, 49 (2d Cir. 2021) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). An administrative warrant application, by contrast, is subject to a "relaxed standard of probable cause." Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 487 (S.D.N.Y. 2019). In this context, probable cause exists to support the issuance of a warrant where there are reasonable grounds to believe a violation has occurred. See Marshall, 436 U.S. at 320 (alterations omitted); id. at 315 ("[R]easonableness is . . . the ultimate standard."); see also Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 488 (S.D.N.Y. 2019) ("[T]he Fourth Amendment ordinarily demands [in the administrative warrant context] that the government demonstrate to a neutral party that a search is justified by some quantum of individualized suspicion."). Thus, in reviewing the United States' Application for an Ex Parte Administrative Warrant ("Warrant Application"), the court was required to find that there were reasonable grounds to believe that a violation had occurred. The granting of an application for an administrative warrant does not require that an agency present conclusive evidence that a violation has occurred. National-Standard Co. v. Adamus, 881 F.2d 352, 360 (7th Cir. 1989).

B.  Discussion

The essence of the Andrewses' argument is that the United States misled the court in its Warrant Application by relying upon evidence generated using the Connecticut definition of wetlands, which definition differs from the federal definition.

4

Under Connecticut law, a wetland is deemed present if a single parameter—hydric soil characteristics—is satisfied. See Conn. Gen. Stat. § 22a-38(15). Under federal law, the definition of wetlands requires proof of three wetland parameters or criteria: proof of predominantly hydrostatic vegetation; hydric soil; and wetland hydrology. See U.S. Army Corps of Engineers 1987 Wetland Delineation Manual ("COE Manual"). The Andrewses argue that, in relying on a wetlands delineation map based on the Connecticut wetland standard, the United States confused or misled the court into concluding that there was reasonable ground to believe a violation of federal law had occurred involving federal wetlands.

The court does not read the Application submitted to obtain the Warrant in the way the Andrewses suggest. In 2003, the Andrewses hired a consultant to prepare a wetlands delineation of the Andrewses property in connection with a possible subdivision development on the property. Application for Ex Parte Administrative Warrant and Order ("Warrant Application") (Doc. No. 73-1) at 9. Using Connecticut state standards, the consultant delineated approximately 10 acres of the Andrewses property as wetlands. Id. The Andrewses are correct that the Warrant Application and supporting Affidavit of Raymond Putnam contains, and references, the 2003 wetlands delineation. However, the United States expressly qualified its reference to the 2003 delineation, specifically pointing out in the Warrant Application—at the beginning of its discussion of this map—that it was prepared using the state standard for wetlands, and described the federal standard as different, defining both. Warrant Application at 9 & n.3.

5

In addition, the Warrant Application recounts evidence of substantial movement of soil and vegetation at the property for over 10 years. Id. at 10. The Warrant Application provided—to the extent possible given the Andrewses' refusal to respond to the United States' repeated requests for permission to enter—observations/photos from adjoining property, as well as aerial records, which clearly evidence human activity that has substantially changed the original condition of the Cooke-Andrews Property, including its original state as possibly containing wetlands. Where, as here, wetlands indicators may be missing because of man-made disturbances to the land, the presence of all three criteria is not required to make a wetlands determination. See COE Manual at 73-83; see also United States v. Sweeney, 483 F. Supp. 3d 871, 923 (E.D. Cal. 2020) (stating that where "unauthorized activities have impacted a site's vegetation, soils, or hydrology, . . . not all three parameters have to be met, and 'all possible evidence that may be used to characterize the [characteristics] that previously occurred' should be collected and the surveyor is to 'examine the available data' to make a determination, if possible." (quoting COE Manual at 78-79, 81-82)).

Finally, the Warrant Application provides U.S. Department of Agriculture soil survey data and U.S. Fish and Wildlife National Wetland Inventory wetlands data, Warrant Application at 9, which, together with the other evidence of substantial changes in the condition of the property, further supports that there were reasonable grounds to believe that the Cooke-Andrews Property contained federal wetlands that had previously been, or were actively being, filled.

The Andrewses position appears to be that the United States needed to show the existence of federally defined wetlands on the property before it could obtain an

administrative warrant to investigate.  That is not the law.  While judicial review of the Warrant Application provides protection to a property owner under the Fourth Amendment, the standard that the judicial officer applies is a relaxed standard: there must be presented to the judicial officer in support of the warrants sufficient evidence to establish reasonable cause or suspicion to authorize the inspection.  See, e.g., Marshall v. Horn Seed Co., 647 F.2d 96, 102 (10th Cir. 1981) ("There must be some plausible basis for believing that a violation is likely to be found.  The facts offered must be sufficient to warrant further investigation or testing."); West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 958 (11th Cir. 1982) ("[T]he evidence of a specific violation required to establish administrative probable cause . . . must at least show that the proposed inspection is based upon a reasonable belief that a violation has been or is being committed. . . .  This requirement is met by a showing of specific evidence sufficient to support a reasonable suspicion of a violation.").

After examining the Warrant Application, the court rejects the argument that the United States misled the court.  This court concludes that there was more than sufficient evidence presented to the court, in May 2019, for it to reach the conclusion it did: that there was a "reasonable cause" to believe that a violation of CWA had occurred on the Cooke-Andrews Property.  As stated above, nothing in the case law under the Fourth Amendment or the CWA requires that the United States establish a wetlands violation before obtaining a warrant.  All that is required is a reasonable ground—"some quantum of individualized suspicion."  Airbnb, 373 F. Supp. 3d at 488.

The issuance of the Administrative Warrant was well-founded.  This court concludes that there was such reasonable cause placed before the Magistrate Judge in

the Warrant Application and supporting Affidavits for issuance of an administrative warrant. Therefore, the Motion to Suppress (Doc. No. 71) is denied.[2]

## IV.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.    Standard of Review

When a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of showing such jurisdiction. However, a court must accept all well-pleaded factual allegations in the Complaint as true and must draw all reasonable inferences in favor of the plaintiff. Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d. Cir. 2000).

### B.    Discussion

Andrewses have moved to dismiss for lack of subject matter jurisdiction. The court is puzzled by this Motion, as the Complaint alleges violations of the CWA and is brought in the name of the United States of America. The CWA is a federal law and thus, under section 1331, this is an action "arising under" federal law. 28 U.S.C. § 1331. See, e.g., United States v. Krilich, 209 F.3d 968, 973 (7th Cir. 2000) (concluding that "the district court had subject matter jurisdiction over the EPA's [Clean Water Act Section 301(a) violation] case against Krilich because the suit civilly charged a violation of a federal statute which is within the federal courts' federal question jurisdiction").

The Andrewses base their Motion to Dismiss for Lack of Subject Matter Jurisdiction on several grounds. First, they argue that defendants Wesley W. Andrews, Colton C. Andrews, and Ellery Andrews are not "owners" as that word is used in the

---

[2] The court concludes that, even if applicable to the civil enforcement case, nothing presented by the Andrewses would call for a Franks hearing because they have failed to show inaccuracies or omissions requiring one. United States v. Rajaratnam, 719 F.3d. 139, 146 (2d Cir. 2013).

8

CWA, but rather they are merely "nominal owners" under Connecticut law. Mem. In Supp. at 3-16. Second, the Andrewses argue that there are no wetlands on their property, and that they have not discharged pollutants into such wetlands, apparently relying on their Motion to Suppress, if granted, to suppress the evidence collected by the United States using execution of the Warrant. Id. at 16-31. Finally, the Andrewses argue that the statute of limitation bars this action. Id. at 31-40.

As best this court can discern, the Andrewses appear to confuse the existence of subject matter jurisdiction with a failure to state a claim. To invoke subject matter jurisdiction under section 1331, the plaintiff must plead a colorable claim "arising under" the Constitution or laws of the United States. Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006). As noted above, the claims in this case, as asserted by the plaintiff, arise under the CWA. More than 75 years ago, the Supreme Court, in the landmark case of Bell v. Hood, 327 U.S. 678 (1946), noted that a claim arising under a federal statute may be dismissed for lack of subject matter jurisdiction only if the claim is "wholly insubstantial and frivolous." Bell, 327 U.S. at 681-85. The Andrewses do not argue that the United States' claims under the CWA are wholly insubstantial or frivolous, and certainly do not argue that those claims were brought solely for the purpose of obtaining jurisdiction. Thus, while the United States may eventually fail to prove its claims under the CWA by a preponderance of the evidence, it nonetheless has asserted plausible claims arising under the CWA. As noted in the unanimous Arbaugh decision, "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as a

9

predicate or relief—a merits-related determination." Arbaugh, 546 U.S. at 511 (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1], p.12-36.1 (3d ed. 2005)).

It may well be that the United States is unable to prove, under controlling law and facts, that the Andrewses' children are "co-owners", Compl. ¶¶ 10-12, of the Cooke-Andrews Property. However, the United States has plausibly alleged that they are "owners", particularly in light of the fact that, according to the land records of the Town of Wallingford submitted by the Andrewses, they are holders of the record title. See Quit Claim Deed, Exhibit 2 (Doc. No. 71-3). That the children have some agreement with their parents about the Cooke-Andrews Property, see Land Agreement, Exhibit 3 (Doc. No. 71-4), which agreement has not been witnessed, notarized, or recorded on the land records—at least not as defendants have evidenced—does not mean that, on the face of the Complaint, the United States has not plausibly asserted an element of its causes of action under the CWA: that is, that each of the defendants are "person[s]" within the meaning of Section 301(a) of the CWA. See Compl. ¶¶ 8-13; see also, e.g. United States v. Lambert, 915 F. Supp. 797, 802-803 (S.D. W. Va. 1996) (noting that ownership of the property on which unauthorized work is performed is evidence of responsibility for or control over the unauthorized work).

It is clear to this court that it has federal subject matter jurisdiction over the claims brought by the United States under the CWA. The United States has made non-frivolous allegations that there are federal wetlands on the property, and that the defendants have placed unauthorized dredge or fill material into those wetlands in violation of the CWA. Complaint ¶¶ 29-46 (Doc. No. 1). Whether there are matters of factual dispute going to the elements of the United States' claims, or whether the United

States can carry its burden of persuading a jury by a preponderance of the evidence of all elements of its claims against the Andrewses, are issues not now before the court. Regardless of the answers to these questions, it is indisputable that this court has jurisdiction over the claims asserted by the United States.

Lastly, the Motion to Dismiss appears to claim that this court should dismiss the case for lack of jurisdiction because of a five-year statute of limitation contained in the CWA. 28 U.S.C. § 2462 (providing that the time to commence an action for a civil fine penalty or forfeiture is five years). However, the statute of limitations is a defense to be asserted, as the Andrewses have here, in their Answer. See Second Amended Answer (Doc. No. 70) at 8; see also Sierra Club v. Entergy Arkansas LLC, No. 4:18-CV-00854, 2020 WL 7033802, at *10 (E.D. Ark. Nov. 30, 2020) ("Given the plain text of § 2462, the Court's review of the relevant legal authorities and precedents, and the dearth of case law supporting the proposed intervenors' position, the Court concludes that § 2462 is not a jurisdictional statute of limitations."). Unless the allegations of a claim are, on the face of a complaint, all outside the limitations period and reduce the claim to less than colorable, it is not a basis upon which to argue that the court lacks subject matter jurisdiction.[3]

For the foregoing reasons, the court denies the Motion to Dismiss for Lack of Jurisdiction (Doc. No. 71). It would appear that the Andrewses wish to litigate this case on the evidence they choose to offer to the court as determinative of the government's

---

[3] The court questions the Andrewses' argument that this case has been "brought" outside the five-year statute of limitations. Surely the fact that the Complaint relies on events occurring more than 5-years before commencement of the suit does not mean it is time barred. The United States sought an injunction addressed to ongoing conduct and violations, see Compl. ¶¶ 46, 64, 67, which cannot be time barred.

11

inability to prove the elements as plausibly alleged in the Government's CWA claims, and then to argue the court lacks jurisdiction because the United States has "failed" to prove the elements of its claims. This is not how litigation is conducted in the courts of the United States.

This court has jurisdiction over the two claims the United States has asserted in this case under the CWA. The Andrewses have chosen to attack the Complaint not on the grounds that it failed to plausibly allege such claims, i.e., by filing Motion to Dismiss under Rule 12(b)(6), but rather has filed an answer and then subsequently amended answers. Thus, the arguments and points raised by the Andrewses in their Motion to Dismiss will be addressed either upon the close of discovery, in connection with a motion for summary judgment, or failing that, on the merits at trial, where the parties will be afforded the opportunity to introduce evidence concerning whether the United States can carry its burden of proof that the elements of each of its CWA claims have been established.

## V.   CONCLUSION

For the reasons set forth above, the court denies the defendants' Motion to Dismiss for Lack of Jurisdiction and Motion to Suppress (Doc. No. 71). In light of this Ruling, the Andrewses' Motion to Stay (Doc. No. 93) is denied as moot.

**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of June 2021.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge