UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-1300 (JCH) |
| v. | : | |
| | : | |
| JEFFREY ANDREWS, ET AL. | : | |
| Defendants. | : | MARCH 18, 2022 |

**RULING ON MOTION FOR DISQUALIFICATION**
**(DOC. NO. 181)**

## I.      INTRODUCTION

In this action commenced by the United States under the Clean Water Act

("CWA"), Defendant, Jeffrey Andrews ("Mr. Andrews"), has filed a Motion to Disqualify

the undersigned.  See Mot. for Disqualification (Doc. No. 181).  For the reasons

explained below, the Motion is denied.

## II.      BACKGROUND

The United States filed its Complaint against Jeffrey Andrews and his co-

defendants, Lynn Cooke Andrews, Wesley W. Andrews, Colton C. Andrews, and Ellery

W. Andrews, seeking injunctive relief and civil penalties under sections 309(b) and (d) of

the CWA, 33 U.S.C. §§ 1319(b) and 1319(d), in connection with the Andrewses' alleged

discharge of pollutants into waters of the United States without a permit and failure to

respond to the Environmental Protection Agency's ("EPA") information requests.

Complaint (Doc. No. 1).  The United States moved for a preliminary injunction to prevent

the Andrewses from conducting unauthorized dredge and fill activities in jurisdictional

waters pending the resolution of the case.  See Mot. for Preliminary Injunction at 1 (Doc.

No. 8).  On December 29, 2020, after holding an evidentiary hearing on the issue, the

court granted in part the government's Motion for a Preliminary Injunction over the

defendants' opposition, enjoining the defendants from placing additional dredge or fill

material in jurisdictional waters in prescribed areas.  See Order Granting in Part

Preliminary Injunction (Doc. No. 46).  The Andrewses requested and the court granted

an extension of time to file a Motion for Reconsideration, but the Andrewses failed to file

such a Motion.  See Order Granting Motion to Extend (Doc. No. 49).

Subsequently, after twice amending their Answer,[1] the Andrewses filed a Motion

to Dismiss for a Lack of Jurisdiction and Motion to Suppress (Doc. No. 71) as well as a

Motion to Stay (Doc. No. 93), which the court denied.  See Ruling Denying Mots. to

Dismiss for Lack of Jurisdiction, to Suppress, and to Stay  (Doc. No. 97).  In their

Motions, the Andrewses argued that the court lacked jurisdiction over the government's

claims and that the court should suppress any evidence obtained by the United States

during its search of their property pursuant to an administrative warrant.  The court

determined that it had federal question jurisdiction over the matter and that the

administrative warrant was properly issued to the government.  See Ruling on Mot. to

Dismiss, Mot. to Suppress, and Mot. to Stay (Doc. No. 97).

The Andrewses then sought an Emergency Protective Order to preclude the

government from entering onto the subject property for a limited period beginning on

June 23, 2021, to conduct discovery.  See Mot. for Protective Order (Doc. No. 104).

The court denied the Andrewses' Motion for a Protective Order, finding the

---

[1] The United States has filed a Motion to Strike several affirmative defenses, which remains pending before this court. See Mot. to Strike (Doc. No. 74).

government's proposed activities reasonable, minimally intrusive, and within the bounds of permissible discovery contemplated by the Federal Rules of Civil Procedure.  See Order Denying Emergency Rule 26(c) Motion for Protective Order (Doc. No. 110).

After the court denied the Andrewses' Motion Emergency Motion for a Protective Order, the government inspected the property.  On July 6, 2021, the government filed a Notice with the court alleging that it had observed approximately 15 dump truck loads of new fill material within the area subject to the court's preliminary injunction.  See Notice (Doc. No. 112).

On August 13, 2021, Magistrate Judge Vatti granted in part and denied in part another Motion for a Protective Order (Doc. No. 75).  See Order (Doc. No. 120).  Judge Vatti ordered the defendants to produce documents and respond to the United States' first set of interrogatories by August 31, 2021.  The Andrewses, however, failed to do so, and on September 16, the government moved to compel the Andrewses to comply. See Doc. No. 128.  The government also moved on September 28 to compel the defendants' attendance at depositions.  See Doc. No. 133.  The latter Motion was referred to Judge Vatti.

From the outset of the litigation, the Andrewses had been represented by counsel.  However, the two attorneys representing the Andrewses moved to withdraw on August 26, 2021.  See Doc. Nos. 123 & 124.  On October 10, 2021, after a hearing and upon agreement by Jeffrey Andrews, the court granted both attorneys' Motions to Withdraw upon a finding of good cause.  See Doc. No. 144.  The court set a deadline of November 10, 2021, for new counsel to appear or for the individual defendants to file pro se appearances.  By November 12, neither counsel nor any of the defendants had

filed appearances, so Judge Vatti ordered a telephonic status conference for November 22, 2021.  See Doc. No. 148.  On November 15, Jeffrey Andrews filed an appearance (Doc. No. 151) along with a Motion to Dismiss (Doc. No. 150).  Neither Mr. Andrews nor any of the other defendants appeared for the November 22 conference, so Judge Vatti rescheduled to December 6, 2021.  See Doc. No. 158.  On December 6, only Mr. Andrews and counsel for the government appeared.  Id. To date, none of the other defendants have filed appearances.

Mr. Andrews then filed a Motion to Stay Discovery pending the resolution of his November 15 Motion to Dismiss.  Judge Vatti denied the Motion to Stay on January 1, 2021, determining that Mr. Andrews had not shown good cause supporting the Motion. See Doc. No. 170.  On the same day, Judge Vatti granted the government's Motion to Compel Compliance with the Court's August 13, 2021 Order and denied as moot the government's Motion to Compel Attendance of Defendants at Depositions. See Doc. Nos. 167 & 168.  After disposing of these Motions, Judge Vatti scheduled a telephonic status conference for February 14, 2022, posting notice of the conference on the docket and mailing such notice to Mr. Andrews. See Doc. No. 169.  Mr. Andrews again failed to attend the conference.  See Doc. No. 173.  The court rescheduled the status conference to February 23, 2022.  Id.  Five days before the rescheduled status conference, on February 18, Mr. Andrews filed a Motion to Extend (Doc. No. 177), but did not reference a particular deadline to be extended or comply with the requirements of Local Rule 7(b).  At the February 23 status conference, Mr. Andrews explained that he sought to extend the deadline to comply with the court's discovery order until February 28, 2022.  See Doc. No. 179.  Judge Vatti denied the Motion as moot because

the court had already established a deadline of February 28 for compliance with its

discovery order.  Id.  During the same conference, Mr. Andrews made some statements

suggesting he might not comply with the court's discovery order, then indicated that he

intended to file for an extension until March 7 to comply with the court's order.  Id. The

government gave its verbal consent to such an extension, but Mr. Andrews never

moved to extend the deadline.

Instead, on March 7, Mr. Andrews filed a Motion to Dismiss the Case for

Mootness (Doc. No. 180) and a Motion to Disqualify the undersigned.  See Mot. for

Disqualification (Doc. No. 181).  Mr. Andrews has also filed, before another judge in this

District, three claims against the undersigned, alleging violations of his constitutional

rights arising from the undersigned's granting of a preliminary injunction to the United

States on December 29, 2020.  See Andrews v. Hall, 3:22-cv-00280-MPS; Andrews v.

Hall, 3:22-cv-00267-MPS; Andrews v. Hall, 3:22-cv-00269-MPS; see also Order

Granting in Part Mot. for Preliminary Injunction (Doc. No. 46).  The court now considers

Mr. Andrews' Motion for Disqualification.

### III.   LEGAL STANDARD

Two federal statutes govern disqualification of a judge. Section 455 of title 28 of

the United States Code requires that a judge disqualify herself where, inter alia, a

judge's impartiality "might reasonably be questioned", or where a judge has a "personal

bias or prejudice concerning a party."  28 U.S.C. § 455(a), (b)(1).  By its own terms,

section 455 does not provide relief to a party seeking to cause a court to disqualify itself

from a case; rather, it acts as a self-governing directive for the district court.  28 U.S.C.

§ 455(a)-(b) ("Any . . . judge . . . of the United States shall disqualify himself . . . .").  A

party may also seek relief on proper motion under section 144 of title 28 of the United

States Code.  That section provides, in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a
> timely and sufficient affidavit that the judge before whom the matter is
> pending has a personal bias or prejudice against either him or in favor of
> any adverse party, such judge shall proceed no further therein, but another
> judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.  The statute requires that the movant file an affidavit that "state[s] the

facts and the reasons for the belief that bias or prejudice exists."  Id.  Because, here,

Mr. Andrews has submitted no affidavit, Section 144 is does not apply, and the court

addresses his Motion under Section 455 of title 28 of the United States Code

To determine whether a judge's impartiality "might reasonably be questioned," or

whether a judge has a "personal bias or prejudice concerning a party" under Section

455, courts apply an objective test.  The judge must recuse herself if circumstances

exist which constitute an objectively reasonable basis upon which to question the

judge's impartiality, i.e., "would an objective, disinterested observer fully informed of the

underlying facts, entertain significant doubt that justice would be done absent recusal?"

United States v. Amico, 486 F.3d 764, 775 (2d Cir. 2007) (internal quotation marks and

citation omitted); see also Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 447-

48 (2d Cir. 2005) (applying objective test to recusal motion brought under 455(b)(1), and

denying recusal because movant could not demonstrate that the judge's "impartiality

could reasonably be questioned").

## IV.    DISCUSSION

In this case, the only allegation supporting recusal that Mr. Andrews offers

relates to the fact that Mr. Andrews is currently pursuing three lawsuits against the

undersigned.  See Mot. to Disqualify.  However, "it is settled that a judge is not required to recuse him- or herself simply because a litigant before the judge has filed suit or made a complaint against him or her." Salten v. County of Suffolk, No. 08-CV-5294, 2012 WL 3260266, at *2 (E.D.N.Y. Aug. 6, 2012); see also In re Taylor, 417 F.3d 649, 652 (7th Cir. 2005) ("[t]here is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties").  Such a rule requiring recusal would be "detrimental to the judicial system" as "a party would only have to file a complaint to get a different judge." In re Evergreen Sec. Ltd., 570 F.3d 1257, 1265 (11th Cir. 2009).  Moreover, to the extent that Mr. Andrews' Motion could be construed to argue that any of the undersigned's rulings against him demonstrate bias, and therefore that recusal on those grounds would be necessary, it is also well-established that "adverse rulings against the defendant do not render a judge biased such that recusal is proper." U.S. v. Nagy, 19 F. Supp. 2d 139, 140 (S.D.N.Y. 1998).

Furthermore, in the undersigned's view, there is no basis for Mr. Andrews' claims in the lawsuits against the undersigned, as Mr. Andrews seeks damages for injuries allegedly caused by actions the undersigned took in her official judicial capacity.  See Andrews v. Hall, 3:22-cv-00280-MPS; Andrews v. Hall, 3:22-cv-00267-MPS; Andrews v. Hall, 3:22-cv-00269-MPS.  "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991)).  In light of the fact that Mr. Andrews' claims against the undersigned are frivolous, the court concludes that "an objective, disinterested observer fully informed of the underlying

7

facts" would not "entertain significant doubt that justice would be done absent recusal."

<u>Amico</u>, 486 F.3d at 775; <u>see also</u> <u>Taylor</u>, 417 F.3d at 652 ("[R]ecusal is not automatic

because suits against public officials are common and a judge would likely not harbor

bias against someone simply because the person named him in a meritless civil suit.").

Therefore, Mr. Andrews' Motion for Disqualification is denied.

## V.     CONCLUSION

For the foregoing reasons, Jeffrey Andrews' Motion for Disqualification (Doc. No.

181) is denied in part as to the undersigned.  To the extent that the Motion seeks to

disqualify Magistrate Judge Vatti, the Motion is referred to Judge Vatti.

**SO ORDERED.**

Dated at New Haven, Connecticut this 18th day of March 2022.


        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge