UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-1300 (JCH) |
| v. | : | |
| | : | |
| JEFFREY ANDREWS, ET AL. | : | |
|     Defendants. | : | MAY 06, 2022 |

**RULING ON MOTIONS TO DISMISS**
**(DOC. NOS. 150 & 180)**

### I.  INTRODUCTION

This action concerns claims brought by the United States of America on behalf of the Environmental Protection Agency ("EPA") alleging violations of the Clean Water Act ("CWA") against the defendants, Jeffrey Andrews ("Mr. Andrews"), Lynn Cooke Andrews, Wesley W. Andrews, Colton C. Andrews, and Ellery W. Andrews (hereinafter collectively "the Andrewses").  Now before the court are two Motions to Dismiss filed by Mr. Andrews.  See Mot. to Dismiss On Constitutional Grounds (Doc. No. 150); Mot. to Dismiss For Mootness (Doc. No. 180).

Only Mr. Andrews has filed an appearance in this case, and only Mr. Andrews signed the Motions to Dismiss.  See Mot. to Dismiss on Constitutional Grounds at 4; Mot. to Dismiss for Mootness at 2.  While the Motion to Dismiss on Constitutional Grounds states that it was filed on behalf of all of the defendants, see Mot. to Dismiss on Constitutional Grounds at 1, Mr. Andrews is not an attorney and cannot represent his codefendants.  "[A]lthough [l]itigants in federal court have a statutory right to choose to act as their own counsel [under 28 U.S.C. § 1654], . . . an individual who is not licensed

1

as an attorney may not appear on another person's behalf in the other's cause." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005) (internal quotation marks and citations omitted). Thus, the court considers both Motions to Dismiss only insofar as they pertain to the claims against Mr. Andrews.

For the reasons explained below, the court denies Mr. Andrews' Motions.

## II.   BACKGROUND

The court recently detailed the relevant background in its Rulings denying Mr. Andrews' Motion to Disqualify the undersigned (Doc. No. 182) and granting the government's Motion to Strike (Doc. No. 189). Thus, the court provides only a brief overview of the pertinent facts here.

Mr. Andrews and his codefendants own or otherwise control or operate two parcels of land (the "Site") adjacent to waters of the United States. See Compl. at ¶¶ 1, 7-13 (Doc. No. 1); Ruling on Mot. for Preliminary Injunction (Doc. Nos. 46 & 47). On September 2, 2020, the government filed a Complaint against Mr. Andrews alleging violations of sections 301 and 308 of the Clean Water Act arising from the defendants' discharging of pollutants into waters of the United States without a permit and their failure to respond to EPA information requests. See Compl. at ¶ 1. Subsequently, the government moved for a Preliminary Injunction to prohibit the defendants from placing additional fill material or performing earthmoving work in jurisdictional waters on the Site. See Mot. for Preliminary Injunction (Doc. No. 8). The court granted in part the government's Motion, enjoining the defendants from further filling or earthmoving activities within 15 acres of the 65-acre Site. See Ruling on Mot. for Preliminary Injunction.

After the parties litigated several ancillary matters including discovery disputes, see, e.g., Order Denying Mot. for Protective Order (Doc. No. 110), the defendants' first Motion to Dismiss on Jurisdictional Grounds (Doc. No. 52), and defense counsel's Motions to Withdraw (Doc. Nos. 123 & 12), Mr. Andrews filed the instant Motions to Dismiss on Constitutional Grounds (Doc. No. 150) and for Mootness (Doc. No. 180). In his Motion to Dismiss on Constitutional Grounds, Mr. Andrews argues that the government's Complaint and this court's granting of a Preliminary Injunction constitute unconstitutional takings.[1]  See Mot. to Dismiss on Constitutional Grounds at 1-3.  His Motion to Dismiss for Mootness contends that the government's claims have been mooted by Mr. Andrews' earlier Motion to Dismiss on Constitutional Grounds. See Mot. to Dismiss for Mootness.  The court now considers both of Mr. Andrews' pending Motions to Dismiss.

### III.   LEGAL STANDARD

#### A.   12(b)(6)[2]

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co., 955 F.3d 305, 310 (2d Cir. 2020) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)); Fed. R. Civ. P.

---

[1] The Andrewses previously asserted a counterclaim against the government for violations of the Takings Clause.  However, they withdrew this counterclaim when they filed their Second Amended Complaint on March 31, 2021.  See Second Am. Compl. Redline at p. 9 (Doc. No. 70-1).

[2] Mr. Andrews does not specify which subsection of Federal Rule of Civil Procedure 12(b) applies to his Motions to Dismiss.  However, the court construes his pro se filings leniently and understands his Motion to Dismiss on Constitutional Grounds to either raise an affirmative defense or to assert that the government has failed to state a claim under 12(b)(6), while his Motion to Dismiss for Mootness asserts that the court lacks subject matter jurisdiction under 12(b)(1).

3

12(b)(6).  To determine whether a plaintiff has adequately stated "a claim upon which relief can be granted", courts look to the allegations put forth in the complaint, and consider their "legal sufficiency."  Id.

A plaintiff's claim to relief must also be supported by "sufficient factual matter, accepted as true" so as to be "'plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

B.      12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Makarova, 201 F.3d at 113.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635,

638 (2d Cir. 2005).  The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion.  Makarova, 201 F.3d at 113.

The issue of mootness—whether a live conflict or controversy exists between the parties—is one of subject matter jurisdiction and may be raised at any point.  See Fox v. Board of Trustees, 42 F.3d 135, 140 (2d Cir. 1994); see also Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020) ("If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.").  Likewise, ripeness—whether a claim has developed into a controversy worth adjudicating—is a question of subject matter jurisdiction.  Vandor, Inc. v. Militello, 301 F.3d 37, 38 (2d Cir. 2002).

IV.    DISCUSSION

    A.    Motion to Dismiss on Constitutional Grounds (Doc. No. 150)

Mr. Andrews first moves to dismiss the government's Complaint on Constitutional grounds, arguing that the government's claims and this court's issuing of a Preliminary Injunction constitute "uncompensated takings of the defendants['] fifteen acres of farmland."  See Mot. to Dismiss on Constitutional Grounds at 1-2.  Under the Takings Clause of the Fifth Amendment of the United States Constitution, "private property [shall not] be taken for public use, without just compensation."  Knick v. Township of Scott, 139 S. Ct. 2162, 2167 (2019).  When the government physically appropriates private property, the Takings Clause "imposes a clear and categorical obligation to provide the owner with just compensation."  Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021) (citing Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 321 (2002)).  However, a government-imposed regulation that

5

restricts an owner's ability to use his property may also constitute a taking "if regulation goes too far." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922).  To determine whether such a use restriction constitutes a taking, courts apply a "flexible test . . . balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action."  Cedar Point, 141 S. Ct. at 2072 (2021) (citing Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 105 (1978)).

Here, no physical taking has occurred, but Mr. Andrews contends that the government's claims and the court's Preliminary Injunction Ruling temporarily barring the defendants from filling activities on fifteen acres of the Site constitute a taking.  See Mot. to Dismiss on Constitutional Grounds at 1.  The government objects to Mr. Andrews takings argument on four grounds: (1) Mr. Andrews' takings claim is not yet ripe; (2) the actions that Mr. Andrews challenges do not constitute takings; (3) a takings claim is not a defense to the government's Clean Water Act claims; and (4) several constitutional provisions cited by Mr. Andrews do not support his takings claim.  See Opp'n to Mot. to Dismiss on Constitutional Grounds (Doc. No. 155).  However, the court need not address the government's first two arguments in detail,[3] because even

---

[3] While the court need not resolve the government's contentions that Mr. Andrews' takings claim is unripe and without merit, it if did, the court would agree with the reasoning in the government's Opposition.  See Opp'n at 4-8.  In short, to the government's first argument, any takings claim is unripe because a plaintiff asserting a claim that government regulation has effected a taking must first engage in any available permitting process, "because [a] court cannot determine whether a regulation goes 'too far' unless it knows how far the regulation goes." Palazzolo v. Rhode Island, 533 U.S. 606, 622 (2001) (internal citation omitted);  see also United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126–27 (1985) ("[a] requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property . . . the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired.").  Here, Mr. Andrews has not availed himself of the regulatory permitting process under section 404 of the Clean Water Act, see Compl. at ¶ 14, 43; 33 U.S.C. § 1344.  Because Mr. Andrews has not sought a permit to

6

assuming, arguendo, Mr. Andrews' claim were ripe and viable, a meritorious takings claim would not require the court to dismiss the government's claims that Mr. Andrews violated the Clean Water Act.

1. Whether Mr. Andrews' Takings Claim Provides a Basis for Dismissing the Government's Complaint

While Mr. Andrews has not specified the procedural ground for his Motion to Dismiss, the government contends that the court should construe Mr. Andrews' takings argument as moving to dismiss under Federal Rule of 12(b)(6). As the government argues, a takings claim does not provide a ground for dismissal of the government's Complaint under Rule 12(b)(6), because such a claim has no bearing on whether the government has "fail[ed] to state a claim" for Clean Water Act violations "upon which relief can be granted." Fed. R. Civ. Pr. 12(b)(6).

---

continue his filling activities, the government has not refused any request for a permit, and his takings claim is not ripe.

To the government's second argument, the court agrees that the government's bringing of claims in their Complaint and the court's grant of a Preliminary Injunction have not effected a taking. Mr. Andrews argues that these acts constitute takings, citing Cedar Point Nursery v. Hassid, 141 S. Ct. 2063 (2021), a recent Supreme Court case holding that a California regulation granting union organizers access to private property constituted a per se physical taking, as distinguished from a regulatory taking. However, the facts in Cedar Point are distinguishable from the instant case, and enforcement of the Clean Water Act through the government's Claims and the court's Preliminary Injunction Ruling fall squarely within an exception for health and safety inspections recognized by the Supreme Court in Cedar Point. Unlike the broad regulation at issue in Cedar Point, which allowed any union organizer entry onto unspecified farms, the acts challenged in this case aim to abate a specific, ongoing harm to the public: the Andrewses' alleged unpermitted discharging of pollutants into waters of the United States. See, e.g., Compl. at ¶ 2. Such health and safety inspection regimes that exist to mitigate risks posed to the public, the Supreme Court expressly indicated in Cedar Point, do not constitute "takings." See Cedar Point, 141 S. Ct. at 2079-80 (distinguishing the California regulation from "standard health and safety inspections . . . germane to any benefit provided to [landowners] or any risk posed to the public."); see also Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 801 (Fed. Cir. 1993) ("[a] cease and desist order, while stopping the filling of wetlands, specifically left the door open to development by obtaining a permit. That type of regulatory action has been unequivocally held not to effect a taking."). Therefore, Mr. Andrews has not raised a tenable takings claim on the basis of the government's Complaint against him or this court's granting of a Preliminary Injunction.

Under the Fifth Amendment, Mr. Andrews would have a cognizable takings claim only if the government's action against Mr. Andrews were lawful.  See A-1 Cigarette Vending, Inc. v. United States, 49 Fed. Cl. 345, 351 (2001), aff'd sub nom. Brubaker Amusement Co. v. United States, 304 F.3d 1349 (Fed. Cir. 2002).  Therefore, Mr. Andrews' argument that a taking has occurred presupposes that the government's filing of claims against him under the Clean Water Act and this court's granting of a Preliminary Injunction constitute a lawful taking authorized by "some act of Congress."  See Blanchette v. Connecticut Gen. Ins. Corps., 419 U.S. 102, 127 n. 16 (1974).  If such a lawful taking had occurred, then Mr. Andrews would be entitled to seek just compensation for the taking under either the Tucker Act, 28 U.S.C. § 1491(a)(1), or the Little Tucker Act, 28 U.S.C. § 1346(a)(2), depending on the value of the claim.[4]  However, whether Mr. Andrews is entitled to compensation has no bearing on the claims in this case that he violated the Clean Water Act.  Thus, any takings claim that Mr. Andrews may have does not in any way demonstrate that the government failed to state a plausible claim for relief in its Complaint under Federal Rule of Civil Procedure 12(b)(6).

The court notes that in some instances, defendants have also raised takings claims as affirmative defenses to government enforcement actions.  See, e.g., Horne v. Dep't of Agric., 569 U.S. 513, 528 (2013) (holding that the Ninth Circuit erred in declining to adjudicate petitioners' takings defense to a United States Department of Agriculture enforcement action); cf. United States v. Sweeney, 483 F. Supp. 3d 871,

---

[4] Under the Tucker Act, claims for $10,000 or more fall within the exclusive jurisdiction of the Court of Federal Claims.  28 U.S.C. § 1491(a)(1).

934 (E.D. Cal. 2020) (declining to extend Horne to actions under the Clean Water Act). However, as the court has discussed, the Takings Clause does not prohibit the federal government from taking property, but only requires that any such taking be compensated.  See United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 129 (1985) ("[an enforcement action] is not the proper forum for resolving [a takings] dispute: if the Corps has indeed effectively taken respondent's property, respondent's proper course is not to resist the Corps' suit for enforcement by denying that the regulation covers the property, but to initiate a suit for compensation in the Claims Court"); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016 (1984) ("[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to a taking.").  Moreover, federal district courts generally lack authority to adjudicate takings claims when the amount in controversy is more than $10,000.  For such claims, exclusive jurisdiction rests in the "Court of Federal Claims . . . , unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute."  E. Enters. v. Apfel, 524 U.S. 498, 520 (1998) (plurality opinion).  Mr. Andrews has not argued, nor can the court determine, that the amount in controversy in this matter is less than $10,000.

Furthermore, Congress has not expressly withdrawn the Tucker Act grant of jurisdiction to the Court of Federal Claims in the Clean Water Act.  See Sweeney, 483 F. Supp. 3d at 935-37.  Because no provision in the Clean Water Act addresses takings claims, nor does the Act "contain[ ] its own judicial remedies . . . [to] establish[ ] the exclusive framework for the liability Congress created under the statute", see United

States v. Bormes, 568 U.S. 6, 12 (2012), the Clean Water Act does not displace the Tucker Act's grant of exclusive jurisdiction to the Court of Federal Claims. See Sweeney, 483 F. Supp. 3d at 935-37. Thus, Mr. Andrews' takings claim is not properly before the court and does not provide a ground upon which to dismiss the government's claims.

### 2. Whether Other Constitutional Provisions Support Mr. Andrews' Takings Claim

Finally, in his Motion to Dismiss on Constitutional Grounds, Mr. Andrews contends that several additional provisions of the United States Constitution support his Fifth Amendment Takings argument, including the Ninth and Tenth Amendments as well as Article VI, Section 2 (the "Supremacy Clause"). However, none of these provisions bolster Mr. Andrews' Motion. Neither the Ninth nor the Tenth Amendment confers substantive rights upon individuals. See, e.g., Jenkins v. Comm'r, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights; rather, it provides a "rule of construction" that [courts] apply in certain cases"); Padavan v. United States, 82 F.3d 23, 29 (2d Cir. 1996) ("The purpose of the Tenth Amendment is to limit Congress from usurping power that was reserved to the states."). The Supremacy Clause likewise provides no support for Mr. Andrews' Motion to Dismiss, as the Clause "is not a source of any federal rights" but merely "secure[s] federal rights by according them priority whenever they come in conflict with state law", an issue which has not arisen in this Clean Water Act case. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 107 (1989) (internal quotation marks and citation omitted). Accordingly, neither the Ninth and Tenth Amendments nor Article VI, Section 2 of the

United States Constitution provide grounds for the court to dismiss the government's Complaint.

    B.    <u>Motion to Dismiss for Mootness (Doc. No. 180)</u>

Mr. Andrews also moves to dismiss the case for Mootness on the ground that his November 14, 2021 Motion to Dismiss on Constitutional Grounds "has effectively dissolved the controversy", mooting the government's claims. <u>See</u> Mot. to Dismiss for Mootness at 2. However, the court has now denied Mr. Andrews' Motion to Dismiss on Constitutional Grounds, <u>see</u> pp. 5-11, <u>supra</u>. Therefore, the court denies Mr. Andrews' Motion to Dismiss for Mootness as moot.

## V.    CONCLUSION

For the foregoing reasons, Mr. Andrews' Motions to Dismiss (Doc. Nos. 150 & 180) are denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of May 2022.

    <u>/s/ Janet C. Hall</u>
Janet C. Hall
United States District Judge