**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:20-CV-1300 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY ANDREWS, ET AL. | : | OCTOBER 25, 2022 |
| Defendants. | : | |

**RULING ON MOTION FOR SANCTIONS**
**(DOC. NO. 223)**

## I.      INTRODUCTION

The plaintiff, the United States of America ("the government"), brings this Motion

requesting the imposition of sanctions on defendant, Jeffrey Andrews ("Mr. Andrews"),

for his purported failure to comply with the court's August 13, 2021 Order.  See Motion

for Rule 37(b) Sanctions ("Mot. for Sanctions") (Doc. No. 223).  The August Order

detailed Mr. Andrews' discovery obligations, explicitly requiring him to produce

documents and respond to the government's first set of interrogatories.  See August 13,

2021 Order ("August Order") (ECF No. 120).  For the reasons explained below, the

government's Motion is granted.

## II.      BACKGROUND

On March 30, 2021, the government served its first set of requests for discovery

production on the defendants.  See August 13, 2021 Transcript of Proceedings ("August

Tr.") at 7 (Doc. No. 122).  Nearly a month later, the defendants moved to limit the scope

of some of the discovery requests.  Id.; see Motion to Preclude or Substantially Limit

Extent and Frequency of Discovery (Doc. No. 75).  Magistrate Judge Vatti considered

the Motion, issuing his Ruling on the record and in a docket entry in an effort to expedite discovery.  August Tr. at 7, 8; August Order.  Granting in part and denying in part, Judge Vatti ordered the defendants to produce documents and respond to the government's first set of interrogatories by August 31, 2021.  <u>See</u> August Tr. at 23–24, 49, 51–52; August Order.  However, the defendants failed to meet the deadline, and the government moved to compel their compliance on September 16, 2021.  <u>See</u> Motion to Compel Compliance (Doc. No. 128).

The effort to secure defendants' compliance with discovery was interrupted by defense counsels' Motions to Withdraw from the case.  <u>See</u> Motion for Lawrence A. Kogan to Withdraw (Doc. No. 123); Motion for Rachel N. Baird to Withdraw (Doc. No. 124).  Before the court ruled on these motions, attorney Lawrence Kogan sent the defendants a letter highlighting the urgency of meeting discovery deadlines.  <u>See</u> Certificate of Service, Exhibit 1, at 2 (Doc. No. 131-1).  "<u>The Court orders</u>," he wrote, "<u>impose hard deadlines which, if not satisfied, can result in a default judgment being entered by the U.S. District Court against each of you individually and collectively.</u>"  <u>Id.</u> (emphasis in original).  On October 20, 2021, the court granted counsels' Motions to Withdraw, reminding the defendants of their duties with respect to discovery:

> The other thing I want to just mention, Mr. Andrews, is Judge Vatti did order discovery. . . .  He ordered discovery in August sometime I guess the 13th of August so the deadline to do it has passed.  Obviously, the lawyers kind of filed their motion to withdraw and that stopped any activity.
> . . .
> I expect that Judge Vatti, once we have appearances, will schedule a conference, a hearing to discuss with you and the other defendants, you know, when are we doing this discovery.  I ordered it. . . .  I want you to be prepared that's going to come down the road very quickly . . . .

Oct. 20, 2021 Transcript of Proceedings at 42–43 (Doc. No. 147).  At the October

hearing, the court gave defendants twenty-one days to either to find new counsel or

appear pro se.  Id. at 41.  The only defendant to file a Notice of Appearance pro se, as

instructed, was Jeffrey Andrews.  See Appearance of Jeffrey Andrews (Doc. No. 151).[1]

However, he did not participate (nor did any of his co-defendants[2]) at the telephonic

status conference held on November 22, 2021.  See Notice of Orders (ECF No. 158).

        Mr. Andrews was the only defendant to attend the rescheduled telephonic status

conference on December 6, 2021.  Id.  At that hearing, Judge Vatti carefully explained

the then-current state of affairs and set a reasonable timeline for addressing the

government's outstanding Motion to Compel concerning the court's August Order on

discovery.  See December 6, 2021 Transcript of Proceeding ("December Tr.") at 2–10

(Doc. No. 160).  Though typically, a party would have twenty-one days to file a

Memorandum in Opposition to a Motion to Compel, Judge Vatti afforded Mr. Andrews

an additional eight days to do so.  Id. at 8.  With that additional time came a clear

warning about the repercussions of disobeying a court order:

---

[1] Although he filed the Notice, Mr. Andrews did so five days after the deadline set by the court.
See Minute Entry for Proceeding (Oct. 20, 2021) (ECF No. 144); Appearance of Jeffrey Andrews.  This
was one of many accommodations the court has made for Mr. Andrews in the last year.

[2] The four other defendants—Lynn Cooke Andrews, Wesley W. Andrews, Colton C. Andrews,
and Ellery E. Andrews—also failed to file either a pro se appearance or have new counsel file an
appearance by the November 10, 2021 deadline.  See Notice of Orders (ECF No. 158).  Over the ensuing
months, the court offered multiple reminders about this obligation.  See, e.g., Notice of Orders (ECF No.
158) (noting that Judge Vatti reminded Mr. Andrews and his co-defendants of the November 10, 2021
deadline for filing appearances and warning of the possibility of sanctions, including potential default);
Notice to Non-Appearing Defendants (Doc. No. 166) (advising non-appearing defendants that they would
face default and default judgment upon failure to obtain counsel); Order (ECF No. 179) (noting that non-
appearing defendants needed to comply with prior orders to enter appearances).  On April 21, 2022, the
government moved for default judgment against the other four defendants.  See Motion to Strike Answers
and for Default Judgment on Liability Against "Absent Defendants" (Doc. No. 192).  Ultimately, on May
31, 2022, the court directed the Clerk to enter default as to the absent defendants.  See Ruling on Motion
to Strike Answers and for Default Judgment on Liability Against Absent Defendants at 6 (Doc. No. 208).

> [T]he Court directs each of the individual defendants to the provisions of Federal Rule of Civil Procedure 16(f) which provides that[,] "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate-or does not participate in good faith-in the conference; or (C) fails to obey a scheduling order or other pretrial order."  The sanctions available under Federal Rule of Civil Procedure 37(b)(2)(A)(ii)-(vii) include, among others, "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; . . . (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order[. . .]"

Notice of Orders (ECF No. 158).  Undeterred by these cautionary words, neither Mr. Andrews nor any of his co-defendants filed a Memorandum in Opposition by the generous January 4, 2022 deadline.[3]

On January 21, 2022, Judge Vatti held an in-person hearing on the Motion to Compel as well as Mr. Andrews' Motion to Stay the Proceedings.  At the hearing, Judge Vatti made sure Mr. Andrews had previously received a transcript of the August hearing, and that he had time to review it.  See January 21, 2022 Transcript of Proceedings ("January Tr.") at 7 (Doc. No. 175).  Just in case, Judge Vatti also provided Mr. Andrews with another copy of the August transcript as well as a copy of the government's first set of requests for document production.  See id. at 28.  Judge Vatti also directed the government to resend a copy of the first set of interrogatories, this time via FedEx—Mr. Andrews' preferred method of receipt.  Id. at 30.  Judge Vatti made sure Mr. Andrews knew his Chamber's phone number and the court's mailing address.  Id. at 35. Moreover, rather than adopting the government's view that Mr. Andrews failed to

---

[3] This failure was not for lack of knowledge of the court's address or how to submit a filing, as Mr. Andrews successfully submitted two unrelated filings on January 5, 2022.  See Reply to Opposition to Motion to Dismiss (Doc. No. 162); Motion to Stay (Doc. No. 163).

oppose the Motion to Compel, Judge Vatti charitably viewed the arguments advanced in

Mr. Andrews' Motion to Stay as, "in essence, the response."  Id. at 8.  Time and again,

Judge Vatti emphasized that he was "happy to listen to whatever argument" Mr.

Andrews wanted to make, and that his priority was ensuring that Mr. Andrews had "a

fair hearing."  Id. at 10, 19.

At the conclusion of the January 21, 2022 hearing, Judge Vatti granted the

government's Motion to Compel.  Id. at 30.  In setting a February 28, 2022 deadline for

the defendants to respond to the first set of interrogatories and requests for document

production, Judge Vatti—again—afforded defendants "extra time" to ensure compliance.

Id. at 33–34.  Judge Vatti's extension was accompanied, once more, by caution about

the penalties that follow the court's directives:

> Mr. Andrews, the one thing that I want to emphasize here is, if you run into
> difficulty with some of the time limitations, what you need to do is get in touch
> with my chambers.  I can schedule a telephonic status conference if you feel
> there's something you need to raise with me.  Otherwise, you are free to file a
> motion for extension of time with the court if you need additional time.
>
> But what I don't want you to do is simply ignore the deadlines because that's
> where you're going to get into trouble.  Because the penalties for failing to follow
> court-imposed orders and deadlines are sanctions.  They can be default.  You
> may be precluded from raising certain defenses and claims that you want to
> make as a sanction.  You may face monetary sanctions, and as I explained
> earlier, you could face default.
>
> So the most important thing if you have trouble with some of these deadlines that
> have been set is to be in communication with the Court, be in communication
> with Attorney Grillot, and make sure you file motions for extension of time with
> the court."

Id. at 34.  In addition to the February 28 deadline for compliance with the August Order

on discovery, the court made an April 25, 2022 deadline for fact discovery in the case.

See Scheduling Order (ECF No. 171).  In light of this timeline, Judge Vatti scheduled a

telephonic status conference for February 14, 2022, to ensure the defendants were "on track" to meet their first discovery deadline.  January Tr. at 34, 36.

Despite being present when it was scheduled, Mr. Andrews did not appear at the conference on February 14, 2022.  Instead, Judge Vatti waited twenty minutes for Mr. Andrews to arrive before entering a notice reiterating the "sanctions available under Federal Rule of Civil Procedure 37(b)(2)(A)(ii)-(vii)" for disobeying court orders.  See Notice of Failure to Appear (ECF No. 173).  The conference was rescheduled for February 23, 2022.  See Notice of E-Filed Calendar (ECF No. 174).  Mr. Andrews attended the rescheduled date and verbally sought to extend the deadline for compliance to March 7, 2022.  See February 23, 2022 Transcript of Proceeding ("February Tr.") at 7 (Doc. No. 185).  Judge Vatti emphasized that he needed "a written motion to that effect on the docket", and Mr. Andrews indicated he understood.  Id. at 7–8.  Yet again, Judge Vatti directly informed Mr. Andrews of the consequences of failing to comply:

> [I]f th[e] deadline comes and goes without you responding or without you moving for an extension of time, there are rules set forth in Rule 37 in the Federal Rules that would allow for various sanctions.  So I just want you to be advised of that.  I've certainly put those on the docket before.  We'll give you notice of those again.

Id. at 6.  Still, both February 28, 2022, and March 7, 2022, came and went without Mr. Andrews complying with the Order or filing for an extension.  Mr. Andrews did file two motions on March 7, 2022, but nothing related to his discovery obligations.  See Motion to Dismiss for Mootness (Doc. No. 180); Motion for Disqualification (Doc. No. 181).  Thus, once more, the court can be sure that Mr. Andrews' failure to comply with his discovery obligations was not due to a lack of time or ability to draft a document.

6

The next telephonic status conference on this issue was scheduled for May 6, 2022.  See Notice of E-Filed Calendar (ECF No. 193).  A day before the conference, Mr. Andrews notified the court that he did not plan on participating.  See Notice Re: Telephone Status Conference (Doc. No. 198).  In defense of his decision not to attend, Mr. Andrews asserted that he was not given sufficient detail about the subject matter of the call.  Id.  The very same day, the court clarified that the conference was to discuss Mr. Andrews' "non-compliance with the Court's August 13, 2021, discovery order and plaintiff's intentions in light of such non-compliance."  See Notice (ECF No. 199). Additionally, the court stressed that it "intend[ed] to proceed with the conference as scheduled, and that all parties are required to attend."  Id.  Even with this additional context, Mr. Andrews did not attend the May 6, 2022 telephonic status conference.  See Notice (ECF No. 202).

In scheduling a telephonic status conference for June 9, 2022, the court further reminded Mr. Andrews of the potential sanctions available under Rule 37 should he continue to flout pretrial orders.  See Notice (ECF No. 207).  In particular, the court highlighted that Federal Rule of Civil Procedure 37(b)(2)(A)(ii) allows "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Id.

Mr. Andrews did attend the June 9, 2022 status conference, and the court allotted an extra fifteen days for Mr. Andrews to comply with the discovery Order.  See Order (ECF No. 213).  During the hearing, Judge Vatti detailed the gravity of Mr. Andrews' conduct and the consequences that could follow:

> I realize that you're a self-represented party, however, you've got to follow the rules like everybody else.  The government has to follow the rules, you have to

follow the rules.  And, at this point, you're putting yourself in a situation. . . where if the government moves for default for failure to comply with your discovery obligations, there's a significant likelihood that it would be granted.

See June 9, 2022 Proceeding (ECF 212), Audio Recording.  Judge Vatti later added that, "[Judges] generally prefer not to have to default people.  But you're backing me into a corner by not following orders."  Id.  This admonition was also relayed in the Order issued after the hearing, where the court underscored that failure to comply by June 24, 2022, would result in "the issuance of an order to show cause as to why monetary sanctions should not be imposed."  Order (ECF No. 213).

On June 27, 2022, the court held a status conference to ascertain whether Mr. Andrews had met this most recent deadline.  There, the government represented that the June 24, 2022 deadline passed without Mr. Andrews producing any documents or responding to the interrogatories.  See Notice (ECF No. 221).  Mr. Andrews did not dispute his continued noncompliance.  Id.  Thus, the court concluded that "Jeffrey Andrews has no intention to comply with the Court's August 13, 2021 order, despite the various extensions of time he has been afforded."  Id.

On July 11, 2022, the government moved for Rule 37(b) discovery sanctions as a result of Mr. Andrews failure to obey a court order.  See Mot. for Sanctions.  Mr. Andrews did not oppose this Motion.

## III.  JURISDICTION

The court is well aware that Mr. Andrews has filed ten lawsuits against the undersigned and other judges in this district.  See Andrews v. Dooley, 22-cv-1185 (VAB); Andrews v. Shea, 22-cv-950 (KAD); Andrews v. Vatti, 22-cv-873 (KAD); Andrews v. Vatti, 22-cv-335 (MPS); Andrews v. Vatti, 22-cv-334 (MPS); Andrews v.

Vatti, 22-cv-333 (MPS); Andrews v. Vatti, 22-cv-332 (MPS); Andrews v. Hall, 22-cv-280

(MPS); Andrews v. Hall, 22-cv-269 (MPS); Andrews v. Hall, 22-cv-267 (MPS).  It is also

aware that Mr. Andrews' appeal of the dismissal of eight of these cases remains

pending.  See Andrews v. Hall, 22-1298; Andrews v. Hall, 22-2564.  However, in the

first seven cases, Mr. Andrews failed to show cause, and the district court concluded

that the claims "were barred by judicial immunity and dismissed with prejudice the

cases."  Order (ECF No. 6), 22cv873.  Indeed, in his eighth suit—the dismissal of which

was just appealed in early October, see Andrews v. Hall, 22-2564—Judge Dooley did

not provide Mr. Andrews with an opportunity to show cause because she determined

that "the Court already dismissed the same claims in earlier-filed lawsuits."  Order (ECF

No. 6), 22cv873.  Judge Dooley went further, adding:

> [T]he Court warns the plaintiff that further frivolous filings in this case, other pending cases, or new civil actions in the District of Connecticut against Judge Hall and Magistrate Judge Vatti pertaining to the issuance or support of the preliminary injunction in case 3:20-cv-01300-JCH may result in sanctions, including a filing injunction requiring him to obtain the Court's leave before filing any additional motions or requests in this case, his other pending cases, or any new cases filed in this district.

Id. (emphasis in original).

While it is generally true that appeals divest district courts of control over aspects

of a case that are implicated by the appeal, the divestiture of jurisdiction is not

"automatic" and instead is "guided by concerns of efficiency. . . ."  U.S. v. Rodgers, 101

F.3d 247, 251 (2d Cir. 1996).  Indeed, this practice is "a judge made rule originally

devised . . . to avoid confusion or waste of time resulting from having the same issues

before two courts at the same time."  U.S. v. Salerno, 868 F.2d 524, 540 (2d Cir. 1989).

A per se rule divesting district courts of jurisdiction as to matters covered by the

appeal is "subject to abuse."  Rodgers, 101 F.3d at 251; see also Apostol v. Gaillon, 870

F.2d 1335, 1339 (7th Cir. 1989) (asserting that courts "are not helpless in the face of manipulation" of the appellate process, and that district courts can proceed where a question of immunity has been resolved in a manner that "is so plainly correct that nothing can be said on the other side.").  As such, the Second Circuit has recognized that, "at least [in] some circumstances, the district court may proceed with the merits where there is a frivolous appeal" pending.  Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P., 55 F. Supp. 2d 231, 233 (S.D.N.Y. 1999); see also Salerno, 868 F.2d at 540; In re Chevron Corp., 749 F.Supp.2d 170, 179 (S.D.N.Y. 2010) (noting that the rule of divestiture "does not apply where an appeal is frivolous[,] [n]or does it apply to untimely or otherwise defective appeals.").

This case presents another necessary exception to the rule of divestiture.  Mr. Andrews cannot be allowed to use frivolous appeals to manipulate the federal judicial system and stall his civil case further.  After all, sanctions are being considered because of Mr. Andrews' repeated failures to comply with court orders related to discovery, which has grinded the years-long litigation to a halt.  This court—and all other federal courts—has "the inherent power and the constitutional obligation to protect [its] jurisdiction from conduct which impairs [its] ability to carry out Article III functions."  In re Martin-Trigona, 737 F.2d 1254, 1261 (2d. Cir. 1984).  Thus, despite the pending appeals, the court concludes that it retains jurisdiction to grant the Motion to Impose Sanctions against Mr. Andrews.

## IV.   DISCUSSION

For more than a year, Mr. Andrews has done nothing to comply with the court's August Order on his discovery obligations.  The government has sought an order

"prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. . . ."  Fed. R. Civ. P. 37(b)(2)(A)(ii).  The decision to impose sanctions for failure to comply with a discovery order rests within the court's discretion.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.").  In exercising that discretion, the Second Circuit has identified several relevant factors to consider, including, "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  S. New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d. Cir. 2010) (citation and quotation omitted).  Ultimately, each of these factors weigh heavily in favor of the imposition of the sanctions sought in this case.

       1.    Willfulness of Mr. Andrews' Noncompliance

Failure to comply may be construed as willful "when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control."  Nieves v. City of New York, 208 F.R.D. 531, 535 (E.D.N.Y. 2013).  Both on the docket and in the transcript, the court made the parameters of the discovery Order abundantly clear.  In the transcript, Judge Vatti detailed exactly what the defendants needed to produce, one document production request at a time.  See August Tr. at 23–24, 32–35, 41, 43–46, 49, 51–52.  Moreover, Judge Vatti ensured that Mr. Andrews had a copy of the August transcript and that Mr. Andrews familiarized himself with it.  See January Tr. at 7.  Not leaving anything to

chance, Judge Vatti even provided Mr. Andrews with a physical copy of the transcript and scheduled the next discovery deadline with "extra time" for Mr. Andrews to review further the Order.  See id. at 28, 34.

In addition to the litany of steps taken to clarify the contents of the order and Mr. Andrews' accompanying obligation, there is also no evidence that Mr. Andrews' failure to comply with the court Order was due to factors beyond his control.  Judge Vatti initially imposed a deadline of August 31, 2021, to comply with his discovery Order. August Tr. at 49.  When that deadline was missed—in part due to the withdrawal of defense counsel—the court scheduled a new deadline of February 28, 2022.  January Tr. at 30.  However, that date also came and went without Mr. Andrews meeting any of his obligations, as did the next court-ordered deadline of June 24, 2022.  See Notice (ECF No. 221).  Throughout this nearly 10-month period, Mr. Andrews also repeatedly failed to appear at status conferences scheduled to discuss his progress in providing discovery.  See Notice (ECF No. 202); Notice of Failure to Appear (ECF No. 173); Notice of Orders (ECF No. 158).  And yet, during this period replete with missed deadlines and status conferences—a period in which he utterly failed to answer even one interrogatory or produce a single document—Mr. Andrews filed unrelated motions as well as lawsuits concerning rulings in this case against, inter alia, the undersigned and Judge Vatti.  See Ruling on Motion for Disqualification at 5 (Doc. No. 190).  All told, Mr. Andrews' conduct makes clear that his lack of compliance was not due to factors beyond his control: he simply had "no intention to comply with the Court's August 13, 2021 order. . . ."  Notice (ECF No. 221).

Accordingly, the court finds that Mr. Andrews' noncompliance was plainly willful.

2.      Efficacy of Lesser Sanctions

The next consideration is the "efficacy of lesser sanctions."  This factor is particularly relevant before imposing a severe sanction like dismissal, which is a "drastic remedy that should be imposed only in extreme circumstances."  John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (citation and quotation omitted).  Indeed, arguably the only lesser sanction laid out in Rule 37 entails "staying further proceedings until the order is obeyed. . . ."  Fed. R. Civ. P. 37(b)(2)(A)(iv).  Such a measure is ill-equipped to address the discovery quagmire at issue, as it would allow this case to stall in perpetuity—Mr. Andrews' apparent objective here.  Nor is there any indication that a monetary sanction—though available against pro se litigants, Hewett v. Triple Point Tech., 2015 WL 6675529, at *7 (D. Conn. Oct. 30, 2015)—is well-tailored to Mr. Andrews' conduct or capable of remedying his noncompliance.  It may have been appropriate in early 2022—in response to Mr. Andrews' first post-attorney-withdrawal instance of noncompliance—but not after Judge Vatti's generous extensions and Mr. Andrews' flagrant, repeated noncompliance.

Preclusion of evidence remains a "harsh remedy," but it is "necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger."  Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (citation and quotation omitted).  It is a "just" result—as required by Rule 37—as it befits the underlying transgression.  Mr. Andrews was specifically ordered on many occasions to produce the relevant documents and respond to the government's first set of interrogatories.  See discussion supra Section II.  He should not be able to "benefit from [his] own failure to comply" by using the withheld evidence for his own gain.  Id.  As the government rightly argues in its Motion, this sanction is also narrowly tailored to Mr. Andrews'

noncompliance, as the penalty only extends to the evidence and information he refused to provide to the government.  Thus, though it may be viewed by Mr. Andrews as harsh, the severity of the sanction is "commensurate with the non-compliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007).

        3.      Duration of Noncompliance

       Mr. Andrews' obligation to comply with the court's discovery Order began on August 13, 2021.  See August Order.  While it was briefly stayed to address the withdrawal of his counsel, Mr. Andrews as a pro se litigant has known of this obligation since at least December 6, 2022, see December Tr. at 5, and has been in violation of the court Order since February 26, 2022, see Scheduling Order (ECF No. 171).  By even the most generous calculation, Mr. Andrews has failed to comply with the court's Order for nearly eight months.  This is well above the six months of noncompliance in Agiwal v. Mid Island Mort. Corp., which was sufficient for the Second Circuit to affirm dismissal as an appropriate Rule 37 sanction.  See 555 F.3d 298, 303 (2d Cir. 2009); see also Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009) (allowing Rule 37 sanctions where a litigant violated court orders on discovery for three months); Phelan v. Campbell, 507 F. App'x 14, 16 (2d Cir. 2013) (approving Rule 37 sanctions following a failure to submit to a deposition over a period of seven months after the initial discovery order).  Indeed, if the government had sought dismissal as the sanction, this court would have been well within its authority to grant such a motion given Mr. Andrews' flagrant disregard of the court's Order and the many extensions of deadlines Mr. Andrews was given.  Accordingly, for the lesser sanction of preclusion, this greater period of noncompliance than Second Circuit precedent demands is certainly sufficient.

4.      Warnings of Noncompliance

There is no doubt that Mr. Andrews was sufficiently warned of the consequences of his continued noncompliance.  Judge Vatti was patient with Mr. Andrews, explaining his obligations regarding discovery, providing copies of the discovery Order, and detailing the consequences of not answering interrogatories or producing documents. Judge Vatti implored Mr. Andrews to obey the August Order, noting the risks associated with noncompliance no fewer than three times during in-person and telephonic hearings.  See, e.g., June 9, 2022 Proceeding (ECF 212), Audio Recording; February Tr. at 6; January Tr. at 34.  Indeed, Judge Vatti explicitly raised the prospect of Mr. Andrews being "precluded from raising certain defenses in claims" during the in-person hearing on January 21, 2022.  January Tr. at 34.  Furthermore, the docket sheet alone mentions the looming threat of Rule 37 sanctions five times.  See Order (ECF No. 213); Notice (ECF No. 207); Order (ECF No. 179); Notice of Failure to Appear (ECF No. 173); Notice of Orders (ECF No. 158).  Even Mr. Andrews' former counsel warned of the grave consequences of Rule 37 sanctions before withdrawing.  See Certificate of Service at 2.

Additionally, the fact that Mr. Andrews is a pro se party does not spare him of his obligation to read and comply with court orders.  "[A]ll litigants, including pro ses, have an obligation to comply with court orders. . . ."  Agiwal, 555 F.3d at 302 (citation omitted).  "While a court is ordinarily obligated to afford a special solicitude to pro se litigants[,] . . . sanction may nonetheless be appropriate so long as a warning has been given. . . ."  Koehl v. Bernstein, 740 F.3d 860, 862 (2d Cir. 2014) (citation and quotation omitted).  Like any other litigant, a pro se party who flouts his obligation to adhere to court orders "must suffer the consequences of [his] actions."  McDonald v. Head Crim.

Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).  To say that Mr. Andrews was "warned" and yet "flout[ed]" his obligation to comply is, in this case, a gross understatement.

## V.    CONCLUSION

For the foregoing reasons, the court grants the government's Motion to Impose Preclusion Sanctions under Rule 37(b)(2)(A)(ii).  Accordingly, Mr. Andrews may not introduce into evidence information that would have been responsive to the government's discovery requests, either in support of or in defense to the claims in this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of October 2022.


 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge